## In re Application of AssureCare of Vermont, Inc.

[686 A.2d 959]

No. 96-320

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed November 1, 1996

*Leslie C. Pratt*, Montpelier, for Plaintiff-Appellant.

*Margaret H. O'Donnell*, Montpelier, for Amicus Curiae Department of Banking, Insurance, Securities and Health Care Administration.

**Allen, C.J.** AssureCare of Vermont, Inc. (AssureCare) sought to operate in Vermont as a health maintenance organization (HMO) and applied for a certificate of need (CON) under 18 V.S.A. § 9434. The Vermont Health Care Authority (the Authority) denied the application. AssureCare appeals, claiming that the Authority: (1) invented a new criterion for CON qualification, contrary to statutory limitations; (2) erred by requiring that the proposed service be the "least costly and most effective" service provider in Vermont; (3) unfairly imposed several criteria late in the application process; (4) acted beyond its authority by considering the likelihood of AssureCare's success or failure; (5) reviewed criteria that only the Office of Vermont Health Access (OVHA) should examine after a CON has issued; and (6) failed to act within the statutory deadline. We affirm.

AssureCare planned to operate statewide in the commercial health insurance market and become a provider under the state Medicaid program, known as the Vermont Health Access Plan (VHAP). Established by the Legislature in 1995, VHAP is designed to extend health benefits coverage to uninsured Vermonters who were not previously eligible for assistance under the Medicaid program and bring Medicaid beneficiaries into managed care plans.

AssureCare filed a mandatory letter of intent with the Authority, and then filed its formal application. The application was subject to review by the Health Policy Council (Council). The Council's duty was to make a recommendation to the Authority, which was charged with making CON decisions. See 18 V.S.A. § 9440 (prior to 1996 amendment).[1]

---

[1] The Legislature amended the CON statutes, effective July 1, 1996, to create a new division of the Department of Banking, Insurance, Securities and Health Care Administration. We adhere in this opinion to the nomenclature of the parties, whose

The Council and its Finance Committee reviewed AssureCare's proposal, and the Finance Committee voted to recommend approval of the application. The full Council, however, split evenly on a motion to recommend approval. The Authority extended its deadline for making a decision and decided to hold a public hearing on March 18, 1996. AssureCare's representatives attended the meeting and offered the only testimony.

On May 24, 1996, the Authority issued a decision denying AssureCare a CON for its proposed HMO. The Authority found that neither AssureCare's "parent company nor any of its other subsidiaries is authorized to operate an HMO in any jurisdiction. As a result, it has no corporate background, experience, or track record to support its application." Referring to "non-binding" letters of intent, the Authority found that "AssureCare presented no evidence of any kind of commitment from any Vermont or other hospital signaling its willingness to participate in AssureCare's proposed network of providers." It made similar findings as to arrangements with support services and ancillary providers.

The Authority's conclusions addressed six "permissive criteria" included among eighteen criteria set forth under 18 V.S.A. § 9436 for determining whether a CON shall issue: the Council's recommendation (§ 9436(a)(1)); the relationship of the proposed health service to the long-range development plan of the health care facility proposing such service (§ 9436(a)(3)); the availability of less costly or more effective alternatives (§ 9436(a)(5)); the relationship of the proposed health service to the existing health care system, including ancillary or support services (§ 9436(a)(7), (9)); and the availability of resources, including health care providers and management personnel (§ 9436(a)(8)). The Authority expressed "concern" about the Council's deadlock over the application, and made negative findings with respect to the other permissive criteria identified as relevant to the application.

In addition to the permissive criteria, the Authority considered five "required findings" under § 9437 with respect to CON applicants. It concluded that three of the findings applied to the instant application:

[T]he board shall not grant a certificate of need . . . unless it finds:

briefs refer only to the Health Care Authority and not to the new Division of Health Care Administration, which was created following the events here at issue.

(1) superior alternatives to such services, in terms of cost, efficiency, and appropriateness, do not exist, and the development of such alternatives is not practicable . . .

. . . .

(3) in the absence of the proposed new service, patients would experience serious problems in terms of costs, availability, or accessibility, or such other difficulties as may be identified by the board, in obtaining care of the type proposed . . .

. . . .

(5) the proposed new institutional health service is consistent with the health resource management plan . . . .

*Id.* Based in part on issues raised by the permissive criteria, the Authority ruled that the AssureCare proposal did not meet required findings (1) and (3), and denied the application. The present appeal followed.

Our standard of review in appeals from the Authority is very narrow. As we stated in *In re Professional Nurses Service, Inc.*, 164 Vt. 529, 532, 671 A.2d 1289, 1291 (1996), "The Legislature has given the [Health Care Authority] Board express authority for the administration of '[c]omprehensive health planning' in Vermont. 18 V.S.A. §§ 9401(a), 9404(a). Therefore, we will not disturb the Board's statutory interpretations absent a compelling indication of error."

Addressing the permissive criteria, AssureCare argues that the Authority failed to adhere to criterion three (the relationship of the proposed health service to the long-range development plan (§ 9436(a)(3)), thereby inventing a new "readiness" criterion for CON qualification. It contends that this is contrary to the statutory requirement that new criteria be limited to those that are "duly adopted and published 90 days prior to the submission of the original application for certificate of need." *Id.* § 9436(a).

AssureCare argues that this is evidenced by the disparate treatment given to its application compared to that of a similar applicant, the Capital District Physicians' Health Plan (CDPHP), which received a CON from the Authority. According to AssureCare, both applicants had yet to develop provider networks by contracting with physicians or other health care providers. The Authority, however, gave CDPHP both approval and a year in which to implement its proposal.

The Division of Health Care Administration, Department of Banking, Insurance, Securities and Health Care Administration (DHCA),

as amicus curiae, disagrees with AssureCare's analysis. It points out that when CDPHP applied for a CON, it was already an HMO licensed to do business in New York, with a total enrollment of 155,000 subscribers and 1,800 physicians and physician support providers. Its application sought to expand its services into Rutland and Bennington counties, which were adjacent to its existing service area. CDPHP also demonstrated that it had signed up twenty Vermont-based specialists by the time its application was reviewed by the Council, although it had not yet recruited additional primary care physicians.

AssureCare, on the other hand, was a start-up company with no track record or history of providing HMO services in any other state or jurisdiction. It also planned to operate statewide, rather than in a limited service area. It projected a subscriber base of 22,000 people within several months of receiving its CON, and a base of 32,000 by the end of 1998. AssureCare, however, presented no evidence that it could implement this ambitious undertaking.

We agree with DHCA that the Authority's decision to reject AssureCare's application is distinguishable from its decision to issue a CON to CDPHP. Contrary to AssureCare's assertion, the Authority did not establish a new criterion but merely explained the connection between AssureCare's long-term goals — the subject matter of criterion three — and the establishment of a provider network:

> This application is very different from previous CON applications, in that it proposes to immediately begin operations on a statewide basis, serving a relatively large subscriber base. In these circumstances, and in light of the lack of any track record for this company, its parent, or its sister companies in other states, it is especially important that the applicant demonstrate during the CON review process true network capabilities to serve the population it intends to cover, which AssureCare has not done.

AssureCare next contends that the Authority erred in reading criterion five ("availability of less costly or more effective" alternatives (§ 9436(a)(5)) literally, rejecting any CON applicant that cannot demonstrate that it is the least costly and most effective competitor in the marketplace. The Authority's decision did use the phrases "least costly" and "most effective" as criterion guidelines, but it used both phrases in describing the kinds of evidence it expected an HMO applicant for a CON to present. It did not suggest that an applicant

must have lower costs and higher effectiveness than all competitors to be entitled to a CON.

Section 9436 presents an array of criteria and does not direct the Authority in their relative weighting. We may assume, though we need not decide, that an otherwise qualified applicant may receive a CON even if it is does not have the lowest costs of all HMOs in the state. Moreover, the Authority's decision on criterion five states that "the fact that [AssureCare] has not been able to form any kind of a provider network to date indicated that it will *not* be able to operate effectively as an HMO in the state." The phrase "operate effectively" does not suggest that it need operate "*most* effectively," that is, be the most effective HMO in Vermont.

AssureCare also contends that the Authority in effect imposed criteria seven, eight, and nine at the eleventh hour, having indicated at earlier stages of the application process and at the public hearing that these criteria would not be considered. It is true that the Council and the Council's Finance Committee indicated that criteria seven through fourteen were "not applicable." Yet AssureCare concedes that there were relevant, if cursory, questions about these criteria at the hearing. In addition, AssureCare's requests for findings specifically addressed criterion seven (relationship to the existing health care system) and included materials relevant to criteria eight and nine.

More important, AssureCare cannot, and does not, distinguish the subject matter of criteria seven, eight, and nine from the balance of the Authority's considerations. It also does not suggest any significant way in which it was prejudiced by the earlier indications that these criteria would not be considered. On the contrary, the essence of the Authority's decision was that the applicant had not demonstrated its capacity to fulfill its extensive plans for statewide service — a theme that is repeated in considering each of the relevant permissive criteria, not just criteria seven, eight, and nine. In short, AssureCare was not harmed, even if notice about the relevancy of criteria seven, eight, and nine was late in coming.

AssureCare next argues that the Authority was not authorized to delve into "its own predictions as to the ultimate probabilities for the success or failure of such ventures." We disagree. This statement flies in the face of the basic rationale for CON review of new institutional health services, the future success or failure of which is of great public concern. As stated in § 9431:

It is declared to be the public policy of this state that the general welfare and protection of the lives, health and property of the people of this state require that all new institutional health services be offered or developed in a manner which avoids unnecessary duplication, contains or reduces increases in the cost of delivering services, while at the same time maintain and improve the quality of and access to health care services, and promotes rational allocation of health care resources in the state; and that the need, cost, type, level, quality, and *feasibility* of providing any new institutional health services be subject to review and assessment prior to any offering or development.

(Emphasis added.)

The burden of proof was on AssureCare to provide evidence on the permissive criteria, including those that implicated the feasibility of the applicant's plan. The fact that the proceeding was not contested did not bar the Authority from considering evidence, or the lack thereof, bearing on the criteria. Cf. *In re Denio*, 158 Vt. 230, 237, 608 A.2d 1166, 1170 (1992) (even where applicant does not bear risk of nonpersuasion and matter is uncontested, hearing body may consider evidence before it from any source and rule appropriately).

AssureCare also maintains that it is the function of the Authority to authorize development of health services and not thwart that development by examining the availability of resources, which should be examined during a "readiness review" by OVHA.[2] There is nothing in the governing statute to indicate that a readiness review may serve as an alternative to CON review, either generally or as to any specific issues. It is reasonably clear from the statutory and administrative framework for licensing HMOs that readiness reviews are a final check on an applicant's capacity to act in accordance with a CON and the underlying plan, and not a substitute for CON review.

Finally, AssureCare argues that the Authority's failure to act within ninety days of the completion date of AssureCare's application

---

[2] A November 17, 1995, Authority memorandum to AssureCare included an OVHA statement explaining that

> [r]eadiness reviews will be conducted by the State of Vermont as part of the finalization of health plan contracts for participants in the Vermont Health Access Plan. The purpose of the readiness reviews is to ensure that each health plan has the necessary provider network capacity, staffing, and policies and procedures in order to enroll and provide services to members of the managed care program.

complicated and hindered its ability to comply with the requirements of the process. It claims that the Authority's delays were "the single biggest contributor to the delayed creation of a provider network and the staffing shortcomings which the Authority seized upon as grounds for its denial."

We reject this argument for two reasons. First, AssureCare does not adequately explain its contention, and we find nothing in the record to support it. Second, we have noted that "'"[a] statutory time period is not mandatory unless it *both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision."' . . . Where the Legislature has intended a time limit to be mandatory, it has clearly expressed that intent." *In re Mullestein*, 148 Vt. 170, 173-74, 531 A.2d 890, 892 (1987) (quoting *Thomas v. Barry*, 729 F.2d 1469, 1470 n.5 (D.C. Cir. 1984) (quoting *Fort Worth Nat'l Corp. v. Federal Sav. & Loan Ins. Corp.*, 469 F.2d 47, 58 (5th Cir. 1972))). Not only is the ninety-day time period a target date and not a mandatory deadline, but it also appears that AssureCare was well aware that the target date would not be met.

In sum, AssureCare has not demonstrated "a compelling indication of error." *Professional Nurses Serv., Inc.*, 164 Vt. at 532, 671 A.2d at 1291.

*Affirmed.*