2014 VT 133

## Sue Skaskiw and Vermont Volunteer Services for Animals Humane Society v. Vermont Agency of Agriculture, Department for Children and Families, Kristin Haas, Kathleen Smith and Carol Maloney

[112 A.3d 1277]

No. 14-041

Present: **Reiber, C.J., Dooley and Skoglund, JJ., and Pearson and Durkin, Supr. JJ., Specially Assigned**

Opinion Filed December 19, 2014

*Samantha C. Balmes*, Beaverton, Oregon, for Plaintiffs-Appellants.

*William H. Sorrell*, Attorney General, and *Danforth Cardozo, III*, Assistant Attorney General, Montpelier, for Defendants-Appellees.

¶ 1. **Dooley, J.** Plaintiffs Sue Skaskiw and Vermont Volunteer Services for Animals Humane Society appeal the trial court's decision to grant the motion to dismiss of defendants Vermont Agency of Agriculture, Department for Children and Families, Kristin Haas, Kathleen Smith, and Carol Maloney on Skaskiw's claims of defamation, violation of due process, economic interference, and failure to discharge a mandatory duty. We affirm.

¶ 2. The Vermont Spay/Neuter Incentive Program (VSNIP) was created in 2006 to subsidize dog, cat, and wolf-hybrid sterilization procedures for low-income Vermonters. Sue Skaskiw and the

organization she directs, Vermont Volunteer Services for Animals Humane Society (VVSA), administered the VSNIP program from its inception in 2006 until the expiration of Skaskiw's contract in October 2012. Defendant Vermont Agency of Agriculture initially managed the program but responsibility was transferred to defendant Department for Children and Families (DCF), a department within the Agency of Human Services, in 2011. Defendant Haas is an employee of the Agency of Agriculture; defendants Smith and Maloney are employees of DCF.

¶ 3. Sometime after the program's inception, the Agency of Agriculture contracted with Skaskiw to run VSNIP. She still held the contract when responsibility shifted to DCF in 2011, but at that time DCF put the contract out for a competitive bid. Two bidders, Skaskiw and VT-CAN!, submitted proposals, and VT-CAN! won the contract. Skaskiw subsequently filed this lawsuit.

¶ 4. In her complaint, Skaskiw pleaded one count of defamation against Smith and DCF; one count of violation of due process against Smith; one count of tortious interference with a prospective economic advantage against all defendants based on conduct by Haas, Smith, and Maloney; and one count of failure to discharge a mandatory duty against DCF. The thrust of Skaskiw's complaint is that Smith made libelous statements to coworkers about her ability to run the program and that these libelous statements prejudiced the bid selection committee against her; that Haas, Smith, and Maloney manipulated the bid selection process to disadvantage her; that DCF administered the bidding process in ways that disadvantaged her; that VT-CAN! had a "known conflict of interest" with DCF and was improperly using VSNIP to benefit its own veterinary practice; and that DCF continues to mismanage the VSNIP program to Skaskiw's detriment.

¶ 5. In response to Skaskiw's complaint, the defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted under Vermont Rule of Civil Procedure 12(b)(6). The trial court granted defendants' motion and dismissed Skaskiw's claims. This appeal followed.

¶ 6. We review decisions on a motion to dismiss de novo under the same standard as the trial court and will uphold a motion to dismiss for failure to state a claim if "it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." *Dernier v. Mortg. Network, Inc.*, 2013 VT 96,

¶ 23, 195 Vt. 113, 87 A.3d 465 (quotation omitted). We assume as true all facts as pleaded in the complaint, accept as true all reasonable inferences that may be derived from the plaintiff's pleadings, and assume as false all contravening assertions in the defendant's pleadings. *Id.* Our role in reviewing the trial court's decision on such a motion is limited to determining "whether the bare allegations of the complaint are sufficient to state a claim." *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 7, 186 Vt. 605, 987 A.2d 258 (mem.).

## I. Defamation

¶ 7. We turn first to Skaskiw's defamation claim against Smith. In Count I of her amended complaint, Skaskiw alleged that Smith made false statements about her to coworkers during the bid selection process and that DCF is vicariously liable for these defamatory statements. She alleged that the "statements are blatantly false, and defendants have failed to provide proof of the statements' validity after repeated requests" and that Smith "made these statements during the course of her employment with defendant DCF and used her official DCF email account." Defendants moved to dismiss this claim on the grounds that Smith's statements were privileged, Smith is entitled to qualified immunity, and DCF is entitled to sovereign immunity. The trial court found that even if Smith's statements were conditionally privileged, she may have abused that privilege by *knowingly* making false statements, but the court ultimately dismissed the claims against Smith and DCF on immunity grounds.[1]

¶ 8. ▮ A successful defamation claim requires:

> "(1) a false and defamatory statement concerning [the plaintiff]; (2) some negligence, or greater fault, in publishing the statement; (3) publication to at least one third person; (4) lack of privilege in the publication; (5) special damages, unless actionable per se; and (6) some actual harm [to the plaintiff] so as to warrant compensatory damages."

*Stone v. Town of Irasburg*, 2014 VT 43, ¶ 61, 196 Vt. 356, 98 A.3d 769 (quoting *Lent v. Huntoon*, 143 Vt. 539, 546-47, 470 A.2d 1162,

---

[1] The trial court granted the motion to dismiss based on qualified immunity and not on the sufficiency of Skaskiw's pleadings. We affirm, but on a different rationale.

1168 (1983)). Under consideration here is whether the statements were published to a third person and, if so, whether they were privileged.

¶ 9. ▮ We frequently have adopted provisions of the Restatement (Second) of Torts with respect to defamation, *Sullivan v. Stear*, 2011 VT 37, ¶ 11, 189 Vt. 442, 23 A.3d 663, and turn there now for guidance. Defamatory statements are published if they are communicated "intentionally or by a negligent act to one other than the person defamed." Restatement (Second) of Torts § 577(1) (1977). Statements made within the scope of employment to agents of the same principal are considered published for the purposes of defamation. *Id.* § 577 cmt. i. We therefore conclude that the second and third elements set out above sufficiently were alleged in Skaskiw's complaint.

¶ 10. ▮ Such statements between co-employees are not actionable, however, if they are "published upon an occasion that makes [them] conditionally privileged" and "the privilege is not abused." *Id.* § 593. The privilege is abused when the defendant "knows the matter to be false" or "acts in reckless disregard as to its truth or falsity," *id.* § 600; communicates the matter for an improper purpose, *id.* § 603; knowingly communicates the matter to individuals not otherwise privileged, *id.* § 604; or does not reasonably believe that communicating the matter is "necessary to accomplish the purpose for which the privilege is given." *Id.* § 605. Plainly speaking, the defendant must have communicated the statements in furtherance of the interests sought to be protected by the conditional privilege and not "solely from spite or ill will." *Id.* § 603 cmt. a. Our cases have characterized the elements of the abuse of a privilege as the presence of "malice." *Crump v. P & C Food Mkts., Inc.*, 154 Vt. 284, 293, 576 A.2d 441, 447 (1990); *Lent*, 143 Vt. at 548-49, 470 A.2d at 1169.

¶ 11. ▮ ▮ One particular conditional privilege recognized by the Restatement is applicable here: a conditional privilege for an inferior state officer whose statements were made in performance of official duties.[2] Restatement (Second) of Torts § 598A. This

---

[2] Another conditional privilege is available for communications that protect the legitimate interests of the recipient or a third person, as long as the defendant reasonably believes that information "affects a sufficiently important interest of the recipient or a third person" and the defendant was either under a legal duty to

privilege extends to communications made between government officers and from an officer to individuals outside the government. *Id.* § 598A cmt. d. Although we have not had the occasion to recognize this privilege in the past, other jurisdictions have done so. See D. Elder, Defamation: A Lawyer's Guide § 2:28 (2003) ("The majority rule provides a qualified privilege to inferior state governmental officers or officials making defamatory statements necessary to the performance of official duties . . . ." (footnotes omitted) (quotation omitted)).[3] Given our previous reliance on the Restatement in this area of law, we adopt this privilege. It is directly applicable because Skaskiw alleged Smith was an employee of DCF and made the statements in the course of her employment. As noted above, a conditional privilege is abused, and becomes ineffective, if the defendant acted with malice. A conditional privilege is overcome by a showing of one of two forms of malice: (1) " 'conduct manifesting personal ill will, reckless or wanton disregard of plaintiff's rights, or carried out under circumstances evidencing insult or oppression' " or (2) " 'knowledge of the statement's falsity or with reckless disregard of its truth.' " *Crump*, 154 Vt. at 293, 576 A.2d at 447 (quoting *Lent*, 143 Vt. at 549-50, 470 A.2d at 1169-70).

¶ 12. ▋ ▋ Although we described absence of privilege as an element of the tort in *Stone*, it should, for pleading rules, be seen as an affirmative defense with the burden of proof on the defendant. See *Burbage v. Burbage*, 447 S.W.3d 249, 254 (Tex. 2014). Since a plaintiff has no obligation to plead absence of privilege, this treatment normally would preclude grounding a motion to dismiss on the presence of a privilege. Courts have recognized an exception, however, where the plaintiff's allegations in the complaint show the presence of a privilege. *Helmstadter v.*

---

communicate the information to the recipient or communicated the information in response to a request. Restatement (Second) of Torts § 595. This privilege extends to protecting "a lawful business, professional, property or other pecuniary interest." *Id.* § 595 cmt. d. We do not need to determine whether this privilege applies.

[3] The majority rule among states is that these lower-level state officials are entitled to a conditional privilege, and a minority of states extend to these officials the absolute privilege historically reserved for high-ranking officials. Elder, *supra*, § 2:14 (stating that absolute immunity traditionally is available only to high-ranking officials but that some jurisdictions broadly extend absolute privilege where historically only conditional privilege was due.) We need not consider where to draw the line in this case because the absence of malice is sufficient to affirm the motion to dismiss.

*N. Am. Biological,* Inc., 559 N.W.2d 794, 801 (Neb. Ct. App. 1997); *Dell v. K. E. McCay's Mkt.,* 543 P.2d 678, 681 (Or. 1975); see also *Burbage,* 447 S.W.3d at 254 (stating that plaintiff has burden where complaint shows presence of conditional privilege). That is the case here. Thus, we conclude that Skaskiw also had to include in her pleadings allegations that would overcome the presence of a privilege — in this case that Smith acted with malice. We find no such allegation in the defamation count of the complaint.

¶ 13. ■ Vermont's rules of pleading closely mirror the federal standards and require "a short and plain statement of the claim showing that the pleader is entitled to relief," V.R.C.P. 8(a); see F.R.C.P. 8(a)(2) (same), and allow conditions of the mind, such as malice, to be "averred generally." V.R.C.P. 9(b); see F.R.C.P. 9(b) ("alleged generally"). Although plaintiffs normally meet the pleading burden in a defamation case with general allegations of malice, see *Woodruff. v. Trepel,* 725 A.2d 612, 623 (Md. Ct. Spec. App. 1999), malice need not be alleged explicitly but can be inferred from the pleadings if the complaint alleges facts upon which an inference can be made. See *Neveau v. City of Fresno,* 392 F. Supp. 2d 1159, 1184 (E.D. Cal. 2005) (holding that plaintiff's failure to plead malice was not fatal to claim because allegations that defendants retaliated against plaintiff for his whistleblowing activities was "sufficient to infer intent to injure").

¶ 14. We recognize that Skaskiw claims malice in her brief and even points to other counts in the complaint where she alleged that Smith acted intentionally, knowingly, and recklessly. We also recognize that the trial court found malice implicit in the complaint. As set out above, Skaskiw pleaded only that Smith's statements were false and that Smith failed to provide proof of their validity after being requested to do so. We cannot infer from these allegations that Smith knew the statements were false or acted in reckless disregard of their truth, nor can we infer that Smith made these statements for any improper purpose. The allegation that "defendants have failed to provide proof of the statements' validity after repeated requests" merely supports Skaskiw's claim that the statements were false, but that is not sufficient to defeat the conditional privilege. We therefore find no error in the trial court's dismissal of Skaskiw's defamation claim.

¶ 15. Because we can affirm the trial court's dismissal of Skaskiw's defamation claim against Smith and DCF based on the

deficient pleadings, we need not reach defendants' immunity claims.

## II. Due Process

¶ 16. We turn next to Skaskiw's due process claim against Smith. In Count II of her complaint, Skaskiw alleged that Smith responded to her initial questions on the request for proposal (RFP) in an "ambiguous and incomplete manner" and failed to respond to follow-up questions; that Smith provided information to VT-CAN! that she did not provide to Skaskiw; and that Smith ensured that at least three members of the RFP selection committee viewed Skaskiw "in a negative and incompetent manner" and otherwise corrupted the committee process. In her brief, Skaskiw argues that her competitor, VT-CAN!, had a conflict of interest and should not have been allowed to bid. Skaskiw generally alleged that these actions denied her due process of law.[4] She did not allege that these actions denied any rights created by statute or regulations governing bidding rights.[5]

¶ 17. Again defendants sought to dismiss the claim, arguing that Skaskiw had no protected due process interest as a disappointed bidder. In response, Skaskiw claims that she has a protected liberty interest, as established by DCF"s bidding procedures, and that Smith's actions deprived her of that interest. Defendants counter that Skaskiw has no protected interest because she has no legitimate claim of entitlement to the bid and no standing to assert such an interest. The trial court agreed with defendants and dismissed Skaskiw's claim for failure to demonstrate a valid interest that would trigger due process protections; it did not reach the standing question. We agree with the trial court.

¶ 18. ■ We begin our analysis by defining the nature of the interest at issue. To assert a valid due process claim, plaintiffs "must show that they were deprived of a liberty or property interest within the protection of the Fourteenth Amendment." *Ahern v. Mackey*, 2007 VT 27, ¶ 11, 181 Vt. 599, 925 A.2d 1011 (mem.). Although Skaskiw claims a liberty interest, the trial court

---

[4] She did not allege the source of a remedy although she demanded both compensatory and punitive damages. We infer that her remedy would lie under the Civil Rights Act, 42 U.S.C. § 1983.

[5] The record indicates that Skaskiw initially pursued an appeal based on a conflict of interest but then abandoned it.

correctly pointed out that what Skaskiw actually is claiming is a property interest in the VSNIP contract. Skaskiw argues that DCF created a liberty interest when it established a bidder's right to a fair and equitable bidding process, as evidenced by its grievance procedures for disappointed bidders, which allow a disappointed bidder to contest the award for bias, discrimination, conflict of interest, or failure of DCF to follow procedures.

¶ 19. In support of the alleged liberty interest, Skaskiw relies on *Washington v. Glucksberg*, 521 U.S. 702 (1997), in which the United States Supreme Court considered whether a terminally ill patient's asserted right to assisted suicide was a fundamental liberty interest protected by the due process clause. Yet *Glucksberg* addresses *substantive* due process rights, not *procedural* due process rights; to that end the U.S. Supreme Court stated that some liberty interests are so "deeply rooted in this Nation's history and tradition," including the right to marry, the right to have children, and the right to bodily integrity, that they must be protected against certain government action regardless of the fairness of the procedures. 521 U.S. at 719-21. Skaskiw claims DCF did not follow the appropriate procedures in awarding the bid — clearly a claim of *procedural* rather than *substantive* due process rights. Skaskiw makes no attempt to claim that the right to an award of a government contract is so "deeply rooted" in our history and tradition as to rise to the level of a protected liberty interest.

¶ 20. ■ Our holding that Skaskiw has, at most, a property interest does not end our inquiry. We have recognized a protected property interest in the right to government employment. See *Brennan v. Town of Colchester*, 169 Vt. 175, 179, 730 A.2d 601, 605 (1999). Such an interest arises when a plaintiff has a "legitimate claim of entitlement to a governmental benefit rather than a unilateral expectation." *In re New Cingular Wireless PCS, LLC*, 2012 VT 46, ¶ 13, 192 Vt. 20, 54 A.3d 141 (quotation omitted). A plaintiff may have a legitimate claim to government employment when "an implied agreement or policy exists," *Brennan*, 169 Vt. at 179, 730 A.2d at 605, but the plaintiff "clearly must have more than an abstract need or desire for it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); cf. *LaFlamme v. Essex Junction Sch. Dist.*, 170 Vt. 475, 484, 750 A.2d 993, 1000 (2000) (stating that mere unilateral hope of becoming elected village trustee does not rise to level of entitlement).

¶ 21. ▮ Skaskiw's interest does not, however, rise to the level of government employment. Because a bidder has nothing more than a unilateral hope or expectation of securing a contract, a disappointed bidder typically has no legitimate claim of entitlement and thus no protected property interest. See, e.g., *Laidlaw Transit, Inc. v. Anchorage Sch. Dist.*, 118 P.3d 1018, 1025-27 (Alaska 2005); *AlohaCare v. Dep't of Human Servs.*, 276 P.3d 645, 658 (Haw. 2012); *Carroll F. Look Constr. Co. v. Town of Beals*, 2002 ME 128, ¶ 16, 802 A.2d 994; *Cleveland Constr., Inc. v. City of Cincinnati*, 2008-Ohio-2337, ¶ 7, 888 N.E.2d 1068 ("[A] property interest in a public contract is created in two situations: one, when a bidder is actually awarded a contract and then deprived of it; and two, when a governmental entity has limited discretion in awarding the contract yet abuses that discretion.").

¶ 22. ▮ Skaskiw recognizes these precedents but argues that the necessary property interest arises from laws that regulate the bidding process prohibiting discrimination, conflicts of interest, and the like. The requirements to which Skaskiw refers do not change the fundamental nature of her interest. Although all government agencies must comply with anti-discrimination and conflict-of-interest restrictions, DCF was under no obligation to award the VSNIP contract to any particular bidder irrespective of the price offer. Skaskiw had nothing more than a mere unilateral hope or expectation that she would win the contract. This expectation is insufficient to create the needed property interest. We therefore find no error in the trial court's dismissal of Skaskiw's due process claim.

## III. Tortious Interference

¶ 23. We turn next to Skaskiw's claim of tortious interference against Haas, Smith, and Maloney for their alleged interference with her economic relationship with DCF, as well as against DCF and the Agency of Agriculture based on vicarious liability. On this count, Skaskiw made many detailed allegations with the overarching claim that the intentional actions of Haas, Smith, and Maloney "in concert and individually, directly and proximately" disrupted Skaskiw's economic relationship with DCF. Skaskiw alleged that each action was performed by the individual defendants in the course of their employment with either DCF or the Agency of Agriculture.

¶ 24. ▪▪ ▪▪ To bring a valid claim of tortious interference with a prospective economic advantage, a plaintiff must plead:

> (1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference on the part of the interferer; (4) damage to the party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained.

*J.A. Morrissey, Inc. v. Smejkal*, 2010 VT 66, ¶ 21, 188 Vt. 245, 6 A.3d 701. A valid claim of tortious interference must also involve three distinct parties — a plaintiff, a defendant, and a third party with whom the plaintiff wishes to deal. *Stone*, 2014 VT 43, ¶ 66; Restatement (Second) of Torts § 766 (1979) ("One who intentionally and improperly interferes with the performance of a contract . . . between another and a *third person* by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.") (emphasis added).

¶ 25. ▪▪ In *Stone*, we concluded that the selectboard members, who had interfered with the town treasurer's performance of duties to the town, were not third parties for the purposes of tortious interference because the selectboard members were agents of the town acting within the scope of their employment. 2014 VT 43, ¶ 67; accord *Preyer v. Dartmouth Coll.*, 968 F. Supp. 20, 26 (D.N.H. 1997) ("[A] co-employee acting as an agent of [an] employer cannot be a third party for the purposes of interfering with the contract between the plaintiff and [the] employer.") (quotation omitted); *Commercial Indus. Constr., Inc. v. Anderson*, 683 P.2d 378, 380-81 (Colo. App. 1984) (affirming trial court's holding that agent acting in scope of authority cannot be held liable for interference with contracts of principal); *BECO Constr. Co. v. J-U-B Eng'rs, Inc.*, 184 P.3d 844, 849-50 (Idaho 2008) (same); *Tarleton State Univ. v. Rosiere*, 867 S.W.2d 948, 952-53 (Tex. App. 1993) (same). Thus, we conclude that there was no third party here because Smith, Haas, and Maloney merely were acting as agents of DCF.

¶ 26. Some courts, however, have carved out an exception for cases where the interference is " 'motived by actual malice, where

actual malice is defined as bad faith, personal ill will, spite, hostility, or a deliberate intent to harm the plaintiff.' " E.g., *Preyer*, 968 F. Supp. at 26 (quoting *Soltani v. Smith*, 812 F. Supp. 1280, 1297 (D.N.H. 1993)). A key component in the analysis of a tortious interference claim under the Restatement involves an understanding of the term "improper" and how it differs from "malice." As the Restatement notes, actual malice, i.e., ill will toward the plaintiff, is not required to satisfy the element of tortious interference. Restatement (Second) of Torts, ch. 37 Spec. Intro. Note. Rather, actions are improper if they are not justified. *Id.* An action may be justified if, for example, it was undertaken to protect the public interest. See *Haegert v. McMullan*, 953 N.E.2d 1223, 1234 (Ind. Ct. App. 2011) (holding that defendant's interference with plaintiff's employment contract by initiating and participating in sexual harassment investigation was not improper because defendant was justified in stopping plaintiff's pattern of harassing students and faculty).

¶ 27. While the *Preyer* court does not state precisely how "malicious" actions differ from "improper" actions, it defines actual malice in traditional terms, 968 F. Supp. at 26 (" '[A]ctual malice is defined as bad faith, personal ill will, spite, hostility, or a deliberate intent to harm the plaintiff.' " (quoting *Soltani*, 812 F. Supp. at 1297)), and cites precedent that includes in this concept of malice actions of an employee taken outside of the scope of employment. *Id.*; see *Huff v. Swartz*, 606 N.W.2d 461, 467-68 (Neb. 2000) (holding that at-will employee could be liable for tortious interference against co-employee when employee acted for his own personal benefit and not for benefit of employer). In *Preyer*, the plaintiff alleged that the defendant had made derogatory racial remarks toward her, preventing her from securing a position with the college; the court found these allegations sufficient to overcome the motion to dismiss. 968 F. Supp. at 26.

¶ 28. Skaskiw's complaint alleged that the actions of Haas, Smith, and Maloney were intentional, knowing, and negligent. Certainly, one may conclude that these defendants acted improperly, which would be sufficient under a traditional tortious interference claim involving a distinct third person. But here we are dealing with an exception to the rule that a third party cannot

interfere with itself,[6] which, if allowable at all,[7] requires a higher showing of malice. Skaskiw did not allege that defendants were acting with actual malice or that they were acting outside of the scope of their employment, that is, acting for their own benefit rather than the benefit of DCF. Skaskiw's allegations suggest that defendants did not want her to continue with the VSNIP program, but she makes no allegation that defendants were motivated by personal spite or ill will. Again, in her brief, Skaskiw made allegations not in the complaint, but, as we concluded with respect to the defamation claim, allegations in the brief cannot make up for their absence in the complaint. We therefore find no error in the trial court's dismissal of Skaskiw's claim of tortious interference. Because of our resolution of this claim, we do not reach defendants' sovereign immunity defense with respect to DCF and the Agency of Agriculture.

### IV. Failure to Discharge a Mandatory Duty

¶ 29. Finally, we address Skaskiw's claim that DCF failed to discharge a mandatory duty. Skaskiw alleged that DCF failed to properly manage VSNIP funds, administer VSNIP, and conduct VSNIP in a manner that avoids the appearance of a conflict of interest. To remedy DCF's alleged failure to discharge its mandatory duty, Skaskiw seeks to: (1) permanently enjoin DCF from awarding VSNIP contracts to VT-CAN! and any other organizations with known conflicts of interest and (2) remove VT-CAN! as the VSNIP grantee. Defendants argue, and the trial court agreed, that Skaskiw's request to enjoin DCF from awarding contracts to organizations with known conflicts of interest is not ripe because DCF is currently administering the program directly and not through a contractor and that her request to remove VT-CAN! as grantee is moot because VT-CAN! no longer administers the program. We agree.

¶ 30. At the outset, we note the mismatch between the broad allegations of DCF's mismanagement of VSNIP and the very

---

[6] Haas worked for the Agency of Agriculture and not DCF. Skaskiw does not suggest that this difference is alone sufficient to produce a different result. Because all of the events underlying Skaskiw's complaint occurred during DCF's administration of the program, it is fair to conclude that, with respect to the actions alleged, Haas was an agent of DCF.

[7] We are not deciding that we would allow a tortious interference claim against an agent of a third party based on malice, but only that no malice is alleged here, so under any definition of the applicable elements, Skaskiw's complaint is insufficient.

limited remedies sought. The remedies focus solely on VT-CAN! and its alleged conflict of interest and address virtually none of the allegations of DCF's mismanagement.

¶ 31. ▮ Skaskiw's request to enjoin DCF from awarding future VSNIP contracts to VT-CAN! and any other organizations with known conflicts of interest is not ripe for review. Claims are ripe "when there is a sufficiently concrete case or controversy," as opposed to one that is abstract or hypothetical. *State v. M.W.*, 2012 VT 66, ¶ 11, 192 Vt. 198, 57 A.3d 696 (quotation omitted). "[C]ourts should not render decisions absent a genuine need to resolve a real dispute," *id.*, and should not render decisions on claims that are "purely speculative . . . involving events that are contingent upon circumstances that may or may not occur in the future." *In re Robinson/Keir P'ship*, 154 Vt. 50, 57, 573 A.2d 1188, 1192 (1990).

¶ 32. In *Robinson/Keir Partnership*, the plaintiff claimed that he faced double liability for loans from a corporation to the plaintiff's partnership: once in an arbitration award, which was at issue in the litigation, and again in a suit by the corporation. We concluded that the plaintiff's claim was not ripe for review because the corporation had not filed a lawsuit, and thus the plaintiff's concern about double recovery was premature. *Id.* at 57-58, 573 A.2d at 1192. Similarly, Skaskiw's concern about DCF contracting with conflicted organizations to administer VSNIP is merely speculative because DCF is not now contracting for administration of VSNIP.

¶ 33. ▮ Skaskiw's request to remove VT-CAN! as the VSNIP contractor is moot. A case becomes moot if "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *In re Moriarty*, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) (quotation omitted). A case that originally presented an actual controversy may become moot if the facts or circumstances of the case change such that we can "no longer grant effective relief." *Id.* In *Houston v. Town of Waitsfield*, 2007 VT 135, ¶ 5, 183 Vt. 543, 944 A.2d 260 (mem.), we held moot the landowners' request to enjoin the town from drilling test wells on their property because the town completed the test wells prior to the appeal. *Id.* ¶ 1. The landowners argued that, because the wells were an ongoing taking entitling them to damages and because the town was committing an ongoing trespass, the controversy was still live and not moot. In rejecting the taking argument, we

emphasized that the only relief the landowners sought in their complaint was an injunction against the drilling and that they were not able to request damages at the appellate level that they did not request in the complaint. *Id.* ¶¶ 7-8. And in rejecting the trespass argument, we noted that the drilling was a discrete event that was over and could not be undone and that the town had no intention of conducting any further drilling. *Id.* ¶ 10.

¶ 34. Our rationale in *Houston* is applicable here. Skaskiw's response to defendants' assertion of mootness is to restate the broad allegations of mismanagement for which she sought no remedy in her complaint. The only remedy sought was to terminate the VT-CAN! contract, but that contract has expired. Since VT-CAN! no longer is administering the program, its contract was discrete, and there is no indication that DCF could reinstate that contract, we cannot grant the relief Skaskiw seeks and the claim is moot.

¶ 35. ██ Skaskiw argues that we have recognized a mootness exception for cases that are " 'capable of repetition, yet evading review,' " *In re S.H.*, 141 Vt. 278, 281, 448 A.2d 148, 149 (1982) (quoting *Roe v. Wade*, 410 U.S. 113, 125 (1973)), and argues that it should apply here. To invoke this exception, " '(1) the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [must be] a reasonable expectation that the same complaining party [will] be subjected to the same action again.' " *State v. Tallman*, 148 Vt. 465, 469, 537 A.2d 422, 424 (1987) (alteration in original) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975)). To overcome mootness, there must be something more than mere possibility of future injury. *Moriarty*, 156 Vt. at 164, 588 A.2d at 1065. Skaskiw has failed to demonstrate any reasonable expectation that DCF will enter into any new contract with VT-CAN! or that any future dispute over a second contract would involve the same issues she seeks to raise in this litigation. At most, she has demonstrated only a mere possibility that DCF will reassign the contract to VT-CAN! after the dismissal becomes final. We do not agree that the exception applies.

¶ 36. Skaskiw also argues that a second mootness exception applies here: one for cases of "great public concern." We have not

recognized this exception[8] and, in any event, doubt that we would find it applicable in this situation. We therefore find no error in the trial court's dismissal of Skaskiw's claim of failure to discharge a mandatory duty.

*Affirmed.*

---

[8] Skaskiw cited three decisions in support of her argument. None recognize the exception she seeks. *In re Assurecare of Vermont, Inc.*, 165 Vt. 535, 541, 686 A.2d 959, 963 (1996), states that there is a strong public policy in Vermont to protect the health and well-being of its citizens but does not address any mootness claims. *Tallman*, 148 Vt. at 468-69, 537 A.2d at 424, applies the exception to the mootness doctrine, allowing claims capable of repetition but evading review, but does not discuss exceptions for issues of great public concern. In a ruling on a motion for reargument in *Beecham v. Leahy*, 130 Vt. 164, 287 A.2d 836 (1972), in which we addressed the validity of an abortion statute, the defendant argued that the case had become moot because the plaintiff, since the appeal was heard, had an out-of-state abortion. We denied the defendant's mootness claim because there had been a justiciable controversy at the time of the hearing and no ground for withholding the decision was made before its release. *Id.* at 171, 287 A.2d at 840. Although we noted that abortion is a matter of great public concern, *id.* at 171-72, 287 A.2d at 841, that was not our rationale for denying the mootness claim.