Filed 01/04/22

STATE OF VERMONT

SUPERIOR COURT
Washington Unit

CIVIL DIVISION
No. 21-CV-171

UTOPIAN WIRELESS CORPORATION,
Plaintiff,

v.

CASTLETON STATE COLLEGE et al.,
Defendants.

RULING ON MR. ALCAMO'S MOTION TO DISMISS AND MOTION TO
STAY DISCOVERY AND UTOPIAN'S MOTION TO COMPEL DISCOVERY

In 2007, Plaintiff Utopian Wireless Corporation leased three Educational Broadband Spectrum (EBS) licenses, for an aggregate 30-year lease term, from Defendant Vermont State Colleges (VSC).[1] In its amended complaint, Utopian alleges that VSC breached the agreements in 2020 by unilaterally terminating them following communications with Defendants Michael C. Alcamo and his business, M.C. Alcamo & Co., Inc. (collectively, Mr. Alcamo), which specialize in the sale of EBS licenses. According to the complaint, Mr. Alcamo induced VSC to hire him to sell the licenses under lease with inflated promises of their value, intentionally inducing VSC to wrongfully terminate the leases with Utopian and contract with Mr. Alcamo. Utopian claimed breach of contract (and related claims) against VSC, tortious interference with contract against Mr. Alcamo, and civil conspiracy "to thwart and usurp" the leases against all defendants.

Utopian and VSC have settled all claims between them, and Utopian has filed a notice of dismissal with prejudice of all College defendants. By its terms, the settlement agreement does not apply to Mr. Alcamo. Thus, two claims remain in this case at this point: tortious interference and civil conspiracy against Mr. Alcamo.

Mr. Alcamo has filed a Rule 12(b)(6) motion to dismiss for failure to state a claim. He argues that, *according to the facts as presented by him*, he did not know that there was a valid contractual arrangement at the time of his communications with VSC, Utopian has not shown that he did anything improper in those communications, and that Mr. Alcamo merely provided VSC nonactionable "honest advice" and an opinion as to the value of the licenses, all of which are protected by his First Amendment rights. Mr. Alcamo further argues that the facts—again, as presented by him—are insufficient to support a civil conspiracy claim. He also argues that, in his individual (as opposed to corporate) capacity he should be dismissed from this suit because anything he did personally that could have been tortious was undertaken within the scope of his employment with the corporation.

---

[1] For purposes of this decision, references to Vermont State Colleges includes Defendants Castleton State College, Vermont Technical College, Lyndon State College, and Chancellor Sophie Zdatny.

In a supplemental filing, Mr. Alcamo argues that the settlement agreement between Utopian and VSC somehow resolved Utopian's claims against Mr. Alcamo, mooted them, or *both* res judicata and collateral estoppel now bar them. He characterizes Utopian's litigation of this case notwithstanding the settlement with other parties as "absurd and unfair," "the epitome of bad faith and maliciousness," "sophistry," and "gamesmanship and bad faith." Because, in his view, the claims against him are necessarily meritless following that settlement, he asked that the court stay discovery pending a decision on the motion to dismiss.[2]

Utopian has filed a motion to compel discovery, noting that its discovery requests were delivered long ago, and Mr. Alcamo has never produced any such discovery or properly objected to the requests (other than in the motion to stay, which the court has never granted).

### Utopian's motion to dismiss

Utopian's motion to dismiss for failure to state a claim is subject to Rule 12(b)(6). The purpose of a Rule 12(b)(6) motion is to determine "whether the bare allegations of the complaint are sufficient to state a claim." *Kaplan v. Morgan Stanley & Co., Inc.*, 2009 VT 78, ¶ 7, 186 Vt. 605. Such motions are "'not favored and rarely granted.' This is especially true 'when the asserted theory of liability is novel or extreme,' as such cases 'should be explored in the light of facts as developed by the evidence, and, generally, not dismissed before trial because of mere novelty of the allegations.'" *Alger v. Dep't of Labor & Indus.*, 2006 VT 115, ¶ 12, 181 Vt. 309 (citations omitted); see also *Colby v. Umbrella, Inc.*, 2008 VT 20, ¶ 13, 184 Vt. 1 ("The complaint is a bare bones statement that merely provides the defendant with notice of the claims against it."); *Bock v. Gold*, 2008 VT 81, ¶ 4, 184 Vt. 575 ("the threshold a plaintiff must cross in order to meet our notice-pleading standard is 'exceedingly low'").

Despite this familiar standard, Mr. Alcamo filed an affidavit with his motion and relies upon the factual allegations in it extensively in support of his dismissal arguments. In support of this practice, he claims that his motion is a "speaking motion" that permits additional evidence to be considered in support of dismissal, and he cites to the provision of Rule 12(b) that would permit the court, in appropriate circumstances, to convert a motion to dismiss into a motion for summary judgment. He does not explain why he did not file a motion for summary judgment if that is what he sought, and the court declines to convert his motion otherwise.

Neither Vermont's nor any other jurisdiction's procedural rules of which the court is aware would permit what Mr. Alcamo proposes, which appears to be intended to allow him to develop the evidence for dismissal purposes but to prevent Utopian from doing so. The American system of justice, however, is adversarial, not unilateral. The court will stick with Vermont's well-established Rule 12(b)(6) standard, focus on the allegations of the complaint exclusively, and disregard the facts presented in Mr. Alcamo's affidavit entirely.

---

[2] He also asked the court to sanction Utopian with an assessment of fees and costs, evidently for pursuing necessarily frivolous litigation. Mr. Alcamo's bluster aside, there is no basis for any such sanction.

Applying the correct standard resolves most factual arguments asserted in support of dismissal in Utopian's favor. With regard to tortious interference, the complaint does not in some manner so fail to include allegations as to warrant dismissal. Three legal issues are properly addressed here, however: (a) whether Mr. Alcamo in his individual capacity cannot be liable as an employee, (b) whether the settlement bars either claim against Mr. Alcamo, and (c) whether a viable claim for civil conspiracy has been pleaded.

*Tort liability of an employee*

Mr. Alcamo argues that he, individually, rather than his corporation, should be dismissed from this case as all his actions were undertaken within the scope of his employment. As a factual matter, that is not clear on the face of the complaint. As a legal matter, Mr. Alcamo appears to be under the impression that an employee acting within the scope of employment is immune from tort liability, which can only be asserted against the employer. The legal basis for this proposition is unclear as Mr. Alcamo cites none. The general principle, in fact, is the opposite:

> An agent is subject to liability to a third party harmed by the agent's tortious conduct. Unless an applicable statute provides otherwise, an actor remains subject to liability although the actor acts as an agent or an employee, with actual or apparent authority, or within the scope of employment.

Restatement (Third) Of Agency § 7.01. Mr. Alcamo cites no such statute or other authority for his contrary rule. Due to the inadequate briefing, the court declines to address this issue further at this time.

*The settlement agreement*

By its terms, the settlement agreement is between Utopian and VSC. Mr. Alcamo is not a party to it. In fact, he is expressly excluded from the benefit of it, obviously to preserve Utopian's right to proceed against him. He nevertheless argues that the fact of the agreement necessarily bars the claims against him.

The elements of a tortious interference claim are as follows: "(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an intentional act of interference on the part of the interferer; (4) damage to the party whose relationship or expectancy was disrupted; and (5) proof that the interference caused the harm sustained." *Skaskiw v. Vermont Agency of Agric.*, 2014 VT 133, ¶ 24, 198 Vt. 187 (citation omitted). Nothing about such a claim requires a plaintiff asserting it to sue the third party with whom a contract exists or existed, and nothing about the claim requires such a plaintiff to sue and not settle with such a third party.

The same is true of Utopian's civil conspiracy claim. The law simply does not require a plaintiff to sue all joint tortfeasors and not settle with any lest the entire suit be dismissed. As a general matter, "a plaintiff does not release a directly liable party by settling with another directly liable party." *Porter v. Kirkendoll*, 449 P.3d 627, 632 (Wash. 2019). Mr. Alcamo does not explain why this case is any different.

3

The doctrines of res judicata and collateral estoppel, by their terms, simply do not apply in these circumstances. "Res judicata 'bars the litigation of a claim or defense if there exists a final judgment in former litigation in which the 'parties, subject matter and causes of action are identical or substantially identical.'" *Lamb v. Geovjian*, 165 Vt. 375, 379–80 (1996). There is no relevant former litigation that generated a final judgment binding Utopian and Mr. Alcamo. While a settlement agreement can operate as a final judgment for claim preclusion purposes, there obviously is no settlement agreement between Utopian and Mr. Alcamo.

"Collateral estoppel applies when (1) preclusion is asserted against one who was a party in the prior action; (2) the same issue was raised in the prior action; (3) the issue was resolved by a final judgment on the merits; (4) there was a full and fair opportunity to litigate the issue in the prior action; and (5) applying preclusion is fair." *Trickett v. Ochs*, 2003 VT 91, ¶ 10, 176 Vt. 89. Again, there was no prior action. There also was no "issue" that Utopian had any full and fair opportunity to litigate. The issue that the settlement resolved is whether the parties to it would resolve their dispute by agreement rather than litigation. That "issue" is not a matter in dispute between Utopian and Mr. Alcamo.

To the extent that the thrust of Mr. Alcamo's argument is that the settlement agreement necessarily made Utopian whole (or better), and thus there can be no remaining claim against Mr. Alcamo, that argument will rise or fall on the evidence. It is not a legal question reasonably inferable from the face of the complaint. Again, the settlement agreement does not address the claims against Mr. Alcamo. Nor does the settlement agreement create some binding fiction or admission that VSC's alleged breach of contract simply never happened. Nor does tortious interference necessarily require proof of a breach of contract at all. It requires proof of "damage to the party whose relationship or expectancy was disrupted."

*Civil conspiracy*

Mr. Alcamo argues extensively that the facts cannot support a civil conspiracy claim. Much of that argumentation, however, is predicated on evidence that is not properly in the record. More fundamentally, however, Mr. Alcamo argues that the pleadings are deficient. With that, the court agrees.

Both parties rely on a Chittenden Civil Division decision as to what a civil conspiracy claim actually is. That decision provides:

> "A civil conspiracy is, fundamentally, an agreement to commit a tort."
> "It is a claim recognized under the common law of most states." The Vermont
> Supreme Court has not clearly articulated whether such a claim still exists in
> our state, although it apparently did back in 1899. The fact that it is an open
> question means that dismissal is inappropriate at this stage of the
> proceedings.

*Blackberry Corp. v. Coulter*, No 953-10-19 Cncv, at 2–3 (Vt. Super. Ct. Jan. 15, 2020) (Toor, J.) (citations omitted).

4

As far as the amended complaint goes, the underlying "tort" for which there may have been any "agreement to commit" is identified solely as an attempt to "thwart and usurp" Utopian's leases with VSC. Nothing in the complaint provides any notice as to what tort that thwarting and usurping would be if, it is anything other than VSC's breach of contract and Mr. Alcamo's tortious interference with contract. The tortious interference claim is separately asserted, of course. Alleging in a separate claim that, essentially, VSC cooperated with Mr. Alcamo's tortious interference would seem to add nothing to the tortious interference claim itself. The conspiracy claim is completely subsumed by the tortious interference claim. If it is different in any way, the complaint simply does not provide fair notice of it. The conspiracy claim is dismissed on this basis.

*Discovery*

No reasonable basis for having failed to respond to Utopian's discovery requests has been offered, and certainly there is no basis for any further delay. Mr. Alcamo shall respond to those requests promptly.

Order

For the foregoing reasons: (a) Mr. Alcamo's motion to dismiss is granted in part and denied in part; (b) Mr. Alcamo's motion to stay discovery is denied; and (c) Utopian's motion to compel is granted.

SO ORDERED this 4th day of January, 2022.

Robert A. Mello
Superior Judge