NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2018 VT 123

No. 2017-413

In re Champlain Parkway Wetland                            Supreme Court
Conditional Use Determination
(Fortieth Burlington, LLC)

                                                            On Appeal from
                                                            Superior Court,
                                                            Environmental Division

                                                            April Term, 2018


Thomas S. Durkin, J.

Judith L. Dillon of Lisman Leckerling, P.C., Burlington, for Appellant.

Thomas J. Donovan, Jr., Attorney General, and Nicholas F. Persampieri, Assistant Attorney
  General, Montpelier, for Appellee Agency of Natural Resources.

Jonathan T. Rose and Brian S. Dunkiel of Dunkiel Saunders Elliott Raubvogel & Hand, PLLC,
  Burlington, for Appellee City of Burlington.


PRESENT: Reiber, C.J., Skoglund, Robinson, Eaton and Carroll, JJ.


¶ 1.    **EATON, J.**   This appeal arises following the decision of the Agency of Natural Resources (ANR) extending the City of Burlington's 2011 Conditional Use Determination (2011 CUD), which permitted the City to commence construction on the Champlain Parkway project. Appellant Fortieth Burlington, LLC (Fortieth) contests ANR's approval of the permit extension, and the Environmental Division's subsequent affirmance of that decision, on the basis that the City failed to adhere to several project conditions outlined in the 2011 CUD and was required to redelineate and reevaluate the wetlands impacted by the project prior to receiving an extension,

among other reasons.  The Environmental Division dismissed Fortieth's claims, concluding that the project complied with the 2011 CUD's limited requirements for seeking a permit extension and that Fortieth's other claims were collateral attacks against the underlying permit and were impermissible.  We affirm.

## I.  Facts and Procedural History

¶ 2.    The relevant facts as found by the Environmental Division are as follows.  In September 2016, ANR granted the City's request to extend the 2011 CUD for the Champlain Parkway project.  The 2011 CUD approved the proposed project impacts as described in the City's application, provided that the project complied with several conditions that were part of the permit.

¶ 3.    There are three conditions of the CUD at issue here, Conditions A, D, and E. Condition A requires the City to obtain the written approval of the Vermont wetlands office prior to making "material or substantial changes" to the project.  Condition D provides that:

> All construction activities in the wetland and adjacent 50-foot buffer zone shall be performed in compliance with Condition A and shall be completed within five years of the date of this Conditional Use Determination or this Conditional Use Determination will terminate.  The Secretary may grant an extension to this five-year period.  Any request for an extension must be received by the Department at least 30 days prior to the end of the five-year period in order to prevent the termination of this Conditional Use Determination.  A request for extension will be considered a minor modification.

(Emphases added.)  Finally, Condition E states that "[t]he wetland boundary determination is valid for five years from the date of this determination" and that "[t]he delineation will need to be re-evaluated by a qualified wetland consultant if the project is not constructed, or additional impacts are proposed, after the five-year time period expires."  (Emphasis added.)  The interplay between these three conditions—namely whether the conditions are linked or to be applied separately—is at the heart of this appeal.   Fortieth challenges the City's compliance with Conditions A, D, and E; asserts that the project's impacts have changed since ANR granted the original permit; and

2

argues that the City is required to redelineate and reevaluate the project's impacts on nearby wetlands prior to receiving an extension.

¶ 4.    In September 2015, approximately three-and-a-half months before the 2011 CUD was set to expire in January 2016, the City formally requested an extension to the 2011 CUD for the project pursuant to Condition D.  The request was timely according to Condition D's requirement that the application for an extension be filed at least thirty days prior to the end of the 2011 CUD's five-year period.  In its request, the City notified ANR that it had not commenced construction on the project and that the City would like an extension of the original permit.  The City stated that the project's wetland areas and impacts outlined in the original permit authorization had not changed.

¶ 5.    ANR issued a Notice of Amendment to the 2011 CUD, advising that the extension request had been received on behalf of the City and setting the forty-five-day public comment period required under the 2012 Vermont Wetland Rules.  Fortieth filed comments, which included Fortieth's assertion that the extension request "did not include a redelineation or re-evaluation of wetland H/I, or any field data regarding current conditions and boundaries" of the wetlands on the project site as required by Condition E.[1]  Fortieth insisted that an extension of the CUD could not be granted until the site had been reevaluated.  Fortieth's comments were based on Condition E's requirement that if the project was not constructed in the five years when the original CUD was valid, then the wetland boundary delineation would need to be reevaluated after the five-year period expired.

---

[1]  Wetland H/I is a thirteen-acre wetland complex with an adjacent fifty-foot buffer.  It is designated as a Class II wetland pursuant to Vermont Wetland Rule § 2.07.  The City's project has various impacts on wetland H/I, such as a "shared-use path [that] will bisect the wetland," which were known at the time the 2011 CUD was granted.

3

¶ 6.     In response to the comments, ANR agreed with Fortieth that redelineation of the wetland boundary was necessary for the project extension and instructed the City to reevaluate the wetlands on the project site.  ANR later explained that this response to Fortieth's comment was in error—ANR maintained in its briefing and at oral argument before this Court that the City's request for an extension did not trigger Condition E's requirements.  ANR verified that Condition D required the extension request to be filed before the five-year period expired, while Condition E required the wetland to be reevaluated after the five-year period expired—the two conditions were not linked.[2]  Nonetheless, in December 2015 and May 2016, the City redelineated and field verified the wetlands that were included under the 2011 CUD, including "[p]reviously delineated wetlands" and additional wetlands P and Q.  ANR reviewed the information provided by the City and determined that the redelineation of all wetlands on the project site was conducted appropriately and that no changes would preclude the project from moving forward.

¶ 7.     ANR granted the City's extension request for the 2011 CUD, and extended all the conditions of the 2011 CUD, including Conditions A, D, and E.  Fortieth appealed ANR's Extension Decision to the Environmental Division, filing twelve questions in its Statement of Questions.[3]  The majority of the questions related to the project's impacts on wetland H/I and its

---

[2]  ANR's current position is that "[t]he only requirement for obtaining extension of the 2011 CUD was that the City submit a timely request for an extension."

[3]  The twelve questions submitted by Fortieth are as follows:

(1)  Whether the project will result in an undue adverse impact to protected functions and values of the significant wetland H/I, or wetland buffer, and fails to comply with the Vermont Wetland Rules?

(2)  Whether the project complies with Vermont's Wetland Statute, 10 V.S.A. sec. 913?

(3)  Whether the City failed to comply with the terms and conditions of the original CUD issued January 14, 2011, in failing

4

compliance with the Vermont Wetland Rules and Vermont wetland statute 10 V.S.A. § 913 (prohibiting certain activities in wetlands and wetland buffer zones). Questions 3 and 4 challenged the City's compliance with the 2011 CUD conditions because the City "fail[ed] to redelineate the wetland boundary or re-evaluate the wetland delineation" and "provide a wetland delineation by a

to redelineate the wetland boundary or re-evaluate the wetland delineation before it applied for its CUD extension?

(4) Whether the City failed to file a complete and timely wetland permit extension request where it failed to provide a wetland delineation by a qualified wetland consultant during the growing season and failed to include an updated Champlain Parkway Natural Resource Map, [w]etland H/I impacts detail figure, wetland data sheets and functional assessment, and wetland H/I photographs?

(5) Whether the project or project impacts on [w]etland H/I have changed or increased, thereby requiring a new individual wetland permit or major permit amendment, and review under the individual permit standards, Section 9.5 of the Vermont Wetland rules?

(6) Whether the project and permit extension request fail[] to qualify as a minor permit amendment?

(7) Whether a CUD extension request should have been granted?

(8) Whether the wrong version of the Vermont Wetland Rules was applied to the original application, and whether and how that error impacts the extension request?

(9) Whether the project complies with mitigation sequencing under [§] 9.5(b) of the Vermont Wetland Rules?

(10) Whether reliance on anticipated stormwater improvements or benefits arising from the project to the watershed generally can render the adverse impacts to the water storage and stormwater function of wetland H/I not undue?

(11) Whether the functions and values of wetlands J, K, and N, are significant and require a wetland permit prior to impacts to those wetlands?

(12) Whether the project will result in an undue adverse impact to [w]etlands J, K, and N?

5

qualified wetland consultant" based on an updated assessment of wetland H/I prior to applying for its CUD extension. Question 7 broadly asked, "[w]hether a CUD extension request should have been granted." Questions 11 and 12 requested that the City assess the project's impacts on additional wetlands J, K, and N prior to seeking an extension. Fortieth later sought to amend Questions 11 and 12 to assess whether the project would have negative impacts on newly discovered wetland P.

¶ 8. After Fortieth filed its Statement of Questions, the parties filed multiple motions, which the court addressed in its April 14, 2017 decision. In that decision, the court dismissed Questions 1-6 and 8-10, and it directed Fortieth to submit a clarified Question 7. The order also granted Fortieth's request to withdraw Questions 11 and 12 and denied Fortieth's request to amend those questions. Fortieth submitted a clarified Question 7 with six subparts, which largely reiterated Fortieth's original questions.[4] After denying several motions to reconsider and

---

[4] Fortieth's clarified Question 7 contained subparts (a)-(f):

(a) Whether the extension . . . will result in a violation of the Vermont Water Quality Standards . . . ?

(b) Whether the extension . . . complies with the Vermont Wetland Rules?

(c) Whether the extension . . . complies with the Vermont Wetland Statute, 10 V.S.A. § 913?

(d) Whether the extension . . . will have an undue adverse impact on the protected functions and values of significant wetlands?

(e) Whether the extension . . . meets the requirements for granting an extension under the Vermont Wetland Rules[] and the 2011 CUD permit?

(f) Whether the extension . . . was insufficient and incomplete and should have been denied because it did not evaluate impacts to additional significant wetlands, including [w]etlands G and Y, not identified as being impacted in the 2011 CUD, and where such impacts have not been evaluated and there has been no demonstration that these wetland impacts will not result in an undue

conducting an evidentiary hearing in September 2017, the Environmental Division dismissed the rest of the questions and issued a judgment order.

¶ 9.    In its decision, the Environmental Division explained that the CUD is "functionally akin" to a final permit decision, which generally may not be challenged in a subsequent proceeding.  The court ultimately dismissed Questions 1, 2, 6, 8, 9, 10, and clarified Question 7 and its subparts (a)-(e) because, in its view, these questions sought to collaterally attack the 2011 CUD by attempting to tie issues related to the underlying permit to the extension request.

¶ 10.    In addressing Questions 3, 4, 5, and 7(f),[5] the Environmental Division construed the 2011 CUD permit Conditions A, D, and E as separate provisions.  Regarding Questions 3, 4, and 7(f), the court concluded that, while the City was required to comply with both Condition D (extension request) and Condition E (redelineating project impacts), the time frames for complying with Condition D and Condition E were different.  Based on the plain language of the Conditions, the court concluded that the City was required to seek a permit extension under Condition D before the 2011 CUD's five-year expiration date and was required to redelineate the wetland boundary under Condition E after the five-year expiration date.  Regarding Question 5, the court explained that, based on the plain language of the CUD, the City's extension request was a "minor modification" rather than a "material or substantial change," and therefore it did not trigger review of the project by the Vermont wetlands office under Condition A.  Based on these conclusions, the Environmental Division approved ANR's grant of an extension for the project.  Fortieth now appeals the Environmental Division's decision to this Court.

_____

adverse impact to the functions and values of these significant wetlands or a violation of the Water Quality Standards?

[5]  Question 7(f) asked whether the time extension request was insufficient and incomplete as it did not evaluate impacts to additional wetlands not identified as impacted in the 2011 CUD. To the extent this subpart asked for the court to require a reassessment of potential new wetlands, this is similar to Questions 3 and 4, which sought to require redefinition of the wetland boundaries prior to seeking an extension request.

¶ 11. Fortieth lists a number of arguments on appeal. Most notably, Fortieth contends that the Environmental Division erred when it: (1) incorrectly applied the motion-for-summary-judgment standard rather than the motion-to-dismiss standard in dismissing Fortieth's appeal; (2) failed to apply the rules of statutory and permit construction correctly when interpreting the City's 2011 CUD conditions and dismissing Questions 3, 4, 5, and 7(f); (3) dismissed Fortieth's remaining Questions 1-10 and amended Question 7; and (4) denied Fortieth's motion to alter Questions 11 and 12 to add inquires related to project impacts on wetland P. We affirm the Environmental Division's decisions on all counts.

## II. Standard of Review

¶ 12. We review the court's factual findings for clear error and its findings of law de novo. In re Vill. Assocs. Act 250 Land Use Permit, 2010 VT 42A, ¶ 7, 188 Vt. 113, 998 A.2d 712. Thus, we review the Environmental Division's grant of the City's motion to dismiss and its interpretation of the 2011 CUD permit conditions without deference. In re Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 12, __ Vt. __, 180 A.3d 867 (reviewing Environmental Division's interpretation of permit conditions de novo); Skaskiw v. Vt. Agency of Agric., 2014 VT 133, ¶ 6, 198 Vt. 187, 112 A.3d 1277 ("We review decisions on a motion to dismiss de novo under the same standard as the trial court and will uphold a motion to dismiss for failure to state a claim if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." (quotation omitted)).

## III. Motion-to-Dismiss Standard

¶ 13. First, Fortieth alleges that the court erred in granting the City's motion to dismiss because it failed to apply the appropriate standard. Fortieth contends that the court incorrectly held Fortieth to the standard for opposing summary judgment motions and relieved the City of the

8

greater burden under the motion-to-dismiss standard. As a result, Fortieth claims that it was prevented from introducing facts or discovering evidence that might support its appeal.

¶ 14. As explained above, this Court reviews a motion to dismiss de novo under the same standard as the trial court. Skaskiw, 2014 VT 133, ¶ 6. We will uphold a dismissal "for failure to state a claim if it is beyond doubt that there exist no facts or circumstances that would entitle the plaintiff to relief." Id. (quotation omitted). "We assume as true all facts as pleaded" by the nonmoving party, and "accept as true all reasonable inferences derived therefrom, and assume as false all contravening assertions in the [moving party's] pleadings." Birchwood Land Co. v. Krizan, 2015 VT 37, ¶ 6, 198 Vt. 420, 115 A.3d 1009. Because we review the Environmental Division's decision granting the City's motion to dismiss de novo, whether the Environmental Division applied the correct legal standard is not relevant to this appeal.

IV. Interpretation of 2011 CUD Conditions

¶ 15. Next, we consider whether the Environmental Division erred in construing the 2011 CUD conditions and dismissing Fortieth's Questions 3, 4, 5, and 7(f). As explained above, we review the Environmental Division's interpretation of the CUD conditions de novo. Confluence Behavioral Health, LLC, 2017 VT 112, ¶ 12. We construe permit conditions according to the established rules governing statutory construction. Agency of Nat. Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573, 830 A.2d 92 (mem.). In doing so, we first look to the plain meaning of the words used by the drafters to determine their original intent. Id. If the plain meaning of the language is clear, we "accept[] the plain meaning of the words because we presume that they express the underlying intent."[6] Id.

¶ 16. On appeal, Fortieth asserts two theories to support its contention that the City violated the 2011 CUD permit conditions. First, Fortieth contends that Conditions D and E must

---

[6] Generally, we give some level of deference to ANR interpretations of rules promulgated by the agency and/or terms that are within the agency's area of expertise. In re Korrow Real Estate

9

be read together, such that the City was required to redelineate the wetland boundaries implicated by the project prior to applying for a permit extension. Second, Fortieth asserts that the City's request for an extension constitutes a "material or substantial change" under Condition A and therefore the City required the "written approval of the Vermont Wetlands Office" prior to obtaining an extension. As we explain below, under the language of this permit, the only relevant consideration regarding a request for an extension under Condition D is the timeliness of the request. The request for a permit extension was made more than thirty days before the expiration of the five-year CUD period, and thus was timely under the 2011 CUD permit. Accordingly, there exists no set of facts upon which Fortieth could prevail on this issue, and we affirm the court's dismissal of Questions 3, 4, 5, and 7(f).

### A. Conditions D and E

¶ 17.    First, Fortieth argues that the City must redelineate and reevaluate the wetlands on the project site pursuant to Condition E prior to seeking an extension of the 2011 CUD under Condition D. We disagree; the plain language of the 2011 CUD requires the timely filing of an extension application to be considered for a project extension, nothing more.

¶ 18.    The permit language at issue provides the following. Condition D governs project-extension requests. Condition D mandates that "[a]ll construction activities in the wetland . . . shall be completed within five years" of the CUD. If the project requires an extension beyond that five-year time period, Condition D simply provides that "[a]ny request for an extension must be received by the Department at least 30 days <u>prior to the end of the five-year period</u> in order to prevent the termination of [the 2011 CUD]." (Emphasis added.) If this requirement is met, "[t]he Secretary may grant an extension to this five-year period." Condition

LLC Act 250 Permit Amendment Application, 2018 VT 39, ¶¶ 21-22, __Vt. __, 187 A.3d 1125 (outlining when court owes deference to agency interpretations of policy or terms). Here, where we are construing the permit conditions based on their plain language and ANR's expertise is not implicated, we owe no deference to the agency's permit determination.

E is a separate provision that governs delineation of the project's wetland boundaries. Condition E explains that the project's "wetland boundary determination is valid for five years from the date of [the 2011 CUD]." However, "[t]he delineation will need to be re-evaluated by a qualified wetland consultant if the project is not constructed, or additional impacts are proposed, <u>after the five-year time period expires</u>." (Emphasis added.)

¶ 19. Upon reviewing the conditions outlined above, the Environmental Division concluded that the CUD conditions were "clear on their face": the City was not required to conduct a new wetland delineation prior to applying for an extension of the City's five-year term because the procedures for receiving a time extension under Condition D were separate from Condition E's requirement that the City redelineate the wetland boundary. We agree.

¶ 20. Based on the plain language of Conditions D and E, we conclude that the City was not required to redelineate the wetland boundaries prior to seeking a permit extension for the project. First, the language of these conditions indicates that they were intended to be read separately. The language of Condition D is simple: the only condition to seeking an extension is timeliness. If the application for an extension is timely submitted within thirty days of the CUD's expiration date, then "[t]he Secretary may grant an extension to this five-year period." While the 2011 CUD requires the City to comply with all conditions, nowhere does the 2011 CUD specify compliance with Condition E as a prerequisite to seeking a time extension under Condition D. Such a reading would be contrary to the plain language of the CUD. Had the extension provision been meant to be intertwined with Condition E, as the dissent suggests, it would have been a simple matter to include such language within Condition D. It is not for us to rewrite the CUD in a way that might seem more advisable to some, but rather to construe it according to its plain language when, as here, that language is clear.

¶ 21. Second, while the City is required to comply with both Conditions D and E, these provisions have a timeline. Under Condition D, which expressly governs project extensions, the

11

City must apply for a project extension at least thirty days <u>before</u> the CUD's five-year expiration date to avoid termination. In contrast, Condition E, which requires re-assessment of the wetland boundaries, only becomes applicable <u>after</u> the initial five-year permit has expired. Therefore, under the 2011 CUD conditions, the City was required to comply with Condition D and seek an extension before Condition E's requirements were triggered. In theory, this would relieve projects that were not approved for an extension, either due to untimely filings or due to the Secretary's denial of their application, from unnecessarily undergoing the redelineation process. Therefore, under the 2011 CUD, applying for a permit extension was not conditioned upon re-assessing the project's wetland boundaries.

¶ 22. Applying these permit conditions to the case at hand, Condition D simply required the City to seek a permit extension at least thirty days prior to the CUD's termination date in January 2016, which it did. As such, ANR was correct in granting the City's permit-extension request because the City was not required to comply with Condition E prior to filing for an extension.[7]

¶ 23. Fortieth argues that comparing the 2010 Vermont Wetland Rules (VWR) to the most recent version of the rules supports its position that the two provisions were intended to be linked.[8] However, the 2010 VWR were still in force when the 2011 CUD was issued and when

---

[7] Although ANR initially seemed to agree with Fortieth's construction of these provisions in a "Response Summary" issued by the agency, ANR has since changed its position and stated that the City was not required to conduct a redelineation of the wetland boundaries for the project prior to obtaining the extension. Neither the fact that ANR originally indicated a redelineation was necessary nor the fact that ANR has changed position on this issue is relevant to our review of the CUD permit language.

[8] The 2017 VWR cited by Fortieth has recently been superseded by a new set of VWR, effective August 15, 2018. Those rules include similar provisions allowing the Secretary to issue a CUD or order (§ 9); determine whether any wetland is a Class II or Class III wetland (§ 8); or initiate a rulemaking process to classify a wetland as Class I or to lower the classification to a Class I wetland (§§ 4.3, 7). Vermont Wetland Rules §§ 4.3, 7, 8, 9, Code of Vt. Rules 12 030 026 (2018) [hereinafter 2018 VWR], https://dec.vermont.gov/sites/dec/files/documents/wsmd_VermontWetlandRules_2018.pdf [https://perma.cc/G494-DC44]. As such, the language at issue

12

the City sought a permit extension.  As such, the language of the 2018 VWR does not control our interpretation of the 2011 CUD conditions.  To the extent that the 2018 VWR is instructive, these changes lend further support to our interpretation that Conditions D and E were not linked when the 2011 CUD and this extension were granted.

¶ 24.    The 2010 VWR, which was in effect at the time the 2011 CUD issued, simply explains that:

> [a]n individual wetland permit shall remain valid for one year from the date of issuance unless the Secretary specifies a longer period not to exceed five years.  The Secretary may extend a permit for up to a total of ten years beyond the date of issuance of the original permit.

Vermont Wetland Rules § 9.1 (2010) [hereinafter 2010 VWR] https://dec.vermont.gov/sites/dec/files/documents/WSMD_VermontWetlandRules_2010_7_16.pdf [https://perma.cc/YRJ2-ZTXK].  Under this version of the VWR, there are no qualifications limiting the Secretary's ability to extend the original permit for up to ten years beyond the original issuing date.  In contrast, the more recent 2018 VWR provides an expanded version of this language:

> The Secretary may extend a permit for up to a total of ten years beyond the date of issuance of the original permit if the permittee re-evaluates and re-delineates the wetland resources impacted by the authorized activity and the Secretary determines there will be no impact to Class I or Class II wetland or buffer beyond those impacts permitted under the original permit. If any additional wetland or buffer will be impacted, an amendment must be applied for, concurrent with a permit extension.

2018 VWR § 9.1 (emphasis added).  The language in the 2018 VWR specifies that redelineating project boundaries and determining whether additional impacts will occur is a prerequisite to requesting and obtaining a permit extension.  If there are changes to the project or its impacts, the

_____

here remains consistent between the 2017 and 2018 versions of the VWR, and we refer to the more recent 2018 VWR throughout.

13

2018 VWR requires the developer to apply for a project amendment concurrent with the extension application. This clause reiterates that the developer must know about any changes in the project and plan accordingly prior to applying for an extension. However, none of these specifications were included in the 2010 VWR.

¶ 25.    At the time that the 2011 CUD permit issued and the City applied for an extension in 2015, there were no rules providing an expanded definition regarding the interplay between Conditions D and E. The plain language of Conditions D and E in the 2011 CUD provided a clear timeline for the extension application and redelineation process. The fact that the VWR was later revised to clarify these rules merely demonstrates that the language at issue was insufficient to communicate this practice at the time that the 2010 VWR was in place. It would be unfair to impose the enhanced standard crafted for the 2018 VWR retrospectively to the 2011 CUD, and we decline to do so here.

¶ 26.    Fortieth further argues that the extension cannot be granted without a redelineation of the project's wetland boundaries because the project will enter its five-year extension period without valid boundaries. Fortieth is concerned that unknown project impacts may harm various wetlands on and around the project site. This argument is without merit because the City is not excused from compliance with Condition E, or any other permit condition, simply because it receives a permit extension—the City is still required to redelineate the wetland boundaries after the initial five-year permit lapses. Changes in the wetland boundaries or harmful impacts from the project, such as those alleged by Fortieth, would be discovered through this process and appropriate steps could be taken if additional impacts arise. For example, if the result of Condition E's "checkup" on the project's wetland boundaries indicated that the boundaries had changed significantly, then ANR could initiate new delineation proceedings under Section 8 of the VWR, which allows "a person" to petition the Secretary to evaluate and classify a wetland as a Class II

14

or Class III wetland. 2018 VWR § 8.1. If a new wetland was identified in these proceedings, then ANR could address any project impacts to that new wetland through a new permitting proceeding.[9]

## B. Conditions A and D

¶ 27. We also agree with the Environmental Division that the City's request for an extension was not a "substantial or material change" under Condition A of the CUD. Condition A provides that "[n]o material or substantial changes shall be made in the project without the written approval of the Vermont Wetlands Office." (Emphasis added.) However, Condition D specifies that "[a] request for extension will be considered a minor modification." (Emphasis added.) The CUD does not further define "minor modification," and neither the wetland statutes nor the VWR define the term. As such, the plain language of the CUD conditions governs our inquiry. The plain language of the two provisions clearly indicates that a request for an extension—a "minor modification"—under Condition D does not rise to the level of a "material or substantial change" contemplated under Condition A. Therefore, we conclude that merely requesting a time extension under Condition D does not require written approval from the Vermont wetlands office.

¶ 28. In sum, we conclude that: (1) seeking an extension under Condition D of the 2011 CUD was not preconditioned on reevaluating the wetland boundaries under Condition E; and (2) seeking a permit extension under Condition D is a "minor modification" rather than a "material or substantial change" under Condition A and therefore does not require additional review by the Vermont wetlands office. Accordingly, the Environmental Division was correct to dismiss Questions 3, 4, 5, and 7(f).

---

[9] Here, the project did undergo redelineation and reevaluation of the wetlands, and ANR deemed that no changes would preclude the project from moving forward.

## V. Collateral Attacks on 2011 CUD

¶ 29.    Because we conclude that seeking a permit extension under Condition D does not implicate permit Conditions A or E, Fortieth may not appeal ANR's grant of an extension as an avenue to collaterally challenge the City's compliance with these peripheral conditions or to challenge the underlying 2011 CUD.

¶ 30.    Where a land permit decision has become final, a party cannot later collaterally attack that final decision through a separate proceeding. Levy v. Town of St. Albans Zoning Bd. of Adjustment, 152 Vt. 139, 141, 564 A.2d 1361, 1363 (1989). This rule applies to municipal zoning permits through 24 V.S.A. § 4472(d), which specifically bars collateral attacks to final permit decisions. In re Lathrop Ltd. P'ship, 2015 VT 49, ¶¶ 54-55, 199 Vt. 19, 121 A.3d 630. The bar against collateral attacks also applies to Act 250 permits, In re Taft Corners Assocs., Inc., 160 Vt. 583, 593, 632 A.2d 649, 654 (1993), and has been applied to ANR permit decisions, In re Unified Buddhist Church, Inc., 2006 VT 50, ¶ 13, 180 Vt. 515, 904 A.2d 1139 (mem.).

¶ 31.    Here, we are presented with an appeal from an ANR decision granting a time extension to an existing wetland CUD issued by ANR. The 2011 CUD was an act or decision made by ANR pursuant to Chapter 37 of Title 10, which could have been appealed within thirty days pursuant to Chapter 220 of Title 10. When no appeal was made, the 2011 CUD became final. Merely requesting an extension for the 2011 CUD does not alter the 2011 CUD other than to extend the CUD dates. Here, Fortieth's challenges to the project's compliance with Conditions A and E reach beyond the extension determination, asserting that the project's impacts have substantially changed and that new wetland boundaries will be affected by the project.[10] Because

---

[10] Although it is not relevant to our analysis of the City's permit extension request, we note Fortieth has other avenues to raise these challenges. First, the City is still required to comply with Condition E, which functions as a mandatory "checkup" to see whether the boundaries have changed if the project is not started within five years of the original permit issuance. If the information provided as part of the "checkup" suggests the wetland boundaries have changed significantly, then ANR could initiate new delineation proceedings under Section 8 of the current

these allegations are not relevant to the limited scope of the extension request determination, these challenges are collateral to the matter at hand and we do not consider them.

¶ 32.　Similarly, we conclude that the Environmental Division properly dismissed the remainder of the questions raised by Fortieth (Questions 1, 2, 6, 8, 9, 10, and clarified Question 7(a)-(e)) because they are issues that were finally decided in the original 2011 CUD and cannot be collaterally attacked on appeal.[11]　See Lathrop Ltd. P'ship, 2015 VT 49, ¶¶ 54-55; Unified Buddhist Church, Inc., 2006 VT 50, ¶ 13; Taft Corners Assocs., 160 Vt. at 593, 642 A.2d at 654; Levy, 152 Vt. at 142, 564 A.2d at 1363.　Having failed to participate in those proceedings or appeal the 2011 CUD, Fortieth cannot raise those issues on appeal here, when the Court is simply addressing the City's compliance with Condition D's extension procedures.　To the extent Fortieth alleges those questions relate to the extension at issue, they are duplicative of Questions 3, 4, 5, and clarified Question 7(f), which we address above, and should be dismissed for the same reasons.[12]

_____

VWR and could address any project impacts to that new wetland through a new permitting proceeding.　Additionally, both the wetlands statute and VWR allow interested parties to petition ANR for classification proceedings.　See 10 V.S.A. § 914(a); 2018 VWR §§ 8.1-8.5.　Decisions of ANR in such proceedings are appealable to the Environmental Division and the Court.　10 V.S.A. §§ 8504-8505; 2018 VWR § 8.4.　Additionally, the City is not excused from compliance with Condition A.　If the Agency determines that the City needs a wetland permit for the alleged changes asserted by Fortieth, then the City will be required to apply for one before constructing the project.　The Agency may initiate an investigation or enforcement proceeding and, assuming Fortieth can demonstrate standing, Fortieth may have the opportunity to ask to participate in those proceedings. 10 V.S.A. § 8020.　The viability of these options and Fortieth's likelihood of success in pursuing these alternate avenues is beyond the scope of this opinion; we note them merely to demonstrate that there are other ways to monitor the project's impacts on local wetlands.

[11] Questions 1, 2, 9, and 10 attempt to challenge the project's compliance with the Vermont Wetland Rules and statutes; Question 6 challenges whether the 2011 CUD was allowed to define a project extension request as a "minor modification"; and Question 8 challenges whether the correct version of the Vermont Wetland Rules was applied when the 2011 CUD was originally created.　Clarified Question 7 subparts (a) through (e) merely reiterate these challenges.

[12] Fortieth argues that the Environmental Division erroneously relied on "suggested facts" in ANR's memoranda about "separate proceeding[s]" for re-evaluating wetland boundaries." Fortieth contends that: (1) "there is no separate process" for reevaluating the wetland boundaries,

## VI. Motion to Amend Related to Wetland P

¶ 33.    Finally, we conclude that the Environmental Division correctly denied Fortieth's motion to amend the Statement of Questions to raise issues related to wetland P because those issues are not relevant to the time-extension request.  Fortieth contends that wetland P is located close to, and is hydrologically connected to, wetland H/I.  Because of the asserted connection between wetland P and wetland H/I, Fortieth argues that the discovery of wetland P requires a more comprehensive review of the wetland impacts of the project prior to an extension request being granted.  However, as explained above, the 2011 CUD does not require redelineation or reevaluation of the wetland prior to granting an extension request.  The project may receive an extension request under Condition D without these additional measures.  A reevaluation of the wetland delineation is required under Condition E after the original five-year permit has lapsed.  The potential impacts to wetland P should not be considered in a request that solely asks for a time extension of the 2011 CUD, but may be germane concerning other permit conditions.  Therefore, the court was correct in dismissing Fortieth's request to amend is Statement of Questions to add questions related to wetland P.

---

and (2) the availability of alternative mechanisms for challenging the 2011 CUD does not excuse the City from complying with the CUD conditions here.  However, this argument is without merit because the availability of alternative proceedings are not relevant to determining whether the City complied with the limited requirements for a permit extension under Condition D.  We provide examples of these alternate mechanisms to explain how Fortieth would appropriately challenge these apparent areas of concern.  See supra, ¶ 31 n.10.

Similarly, Fortieth's argument that the court erred in "ruling the operational [stormwater] permit can substitute for a wetland permit or authorization from the Vermont Wetlands Program" is beyond the scope of our analysis of the City's permit extension request.  Regulatory processes for reviewing substantial or material changes to the project are not relevant to our analysis of the project's compliance with Condition D, and we decline to consider them.  Accordingly, appellees' joint motion asking this Court to take judicial notice of documents related to ANR's stormwater program and Fortieth's stormwater permit is denied as moot.

VII.  Conclusion

¶ 34.    In sum, we conclude the following.  First, Questions 3, 4, 5, and 7(f) were properly dismissed because, based on the plain language of the 2011 CUD Conditions, (1) the City may seek a permit extension under Condition D without redelineating and reevaluating the project's wetland boundaries under Condition E, and (2) the City's request for a project extension under Condition D is a "minor modification" rather than a "material or substantial change" and thus does not require review by the Vermont wetlands office under Condition A.  Second, to the extent that these Questions collaterally attack the permit's validity for reasons other than its compliance with Condition D, such attacks are impermissible.  The remainder of Fortieth's Questions (1, 2, 6, 7(a)-(e), 8, 9, and 10) constituted impermissible collateral attacks on the underlying 2011 CUD permit and as such were properly dismissed.  Finally, the City appropriately denied Fortieth's request to amend its Question 11 and 12 to add questions related to wetland P because such issues were beyond the scope of proceedings related to a permit extension under Condition D.

Affirmed.

FOR THE COURT:

Associate Justice

¶ 35.    **ROBINSON, J., dissenting in part.**    The 2010 Conditional Use Determination issued to the City of Burlington by the Water Quality Division of the Department of Environmental Conservation, Agency of Natural Resources, contains the following conditions:

> D.  All construction activities in the wetland and adjacent 50-foot buffer zone shall be performed in compliance with Condition A and shall be completed within five years of the date of this Conditional Use Determination or this Conditional Use Determination will terminate.  The Secretary may grant an extension to this five-year period.  Any request for an extension must be received by the Department at least 30 days prior to the end of the five-year period in order to prevent the termination of this Conditional Use

19

Determination. A request for extension will be considered a minor modification.

E. The wetland boundary determination is valid for five years from the date of this determination. The delineation will need to be re-evaluated by a qualified wetland consultant if the project is not constructed, or additional impacts are proposed, after the five-year time period expires.

¶ 36. The majority's suggestion that these two provisions are unrelated and operate independently, even if a permit extension would extend the CUD more than five years beyond the original boundary delineation, would lead to nonsensical consequences. A contrary construction—one that would require a reevaluation of the wetland before the extension can be granted beyond the five-year period during which the boundary determination is valid—is more consistent with the language and structure of the permit and better promotes the purposes of the wetland-protection laws.[13] The parties' own conduct throughout the permit extension process and prior to the appeal to the Environmental Division, as well as ANR's subsequent amendment of its rules, reinforce that approval of the City's extension request is contingent on completion of a reevaluation of the wetland by a qualified wetland consultant. Accordingly, I respectfully dissent from that portion of the majority's decision relating to its conclusion that these two provisions operate independently and holding that the City may secure an extension without reevaluating the wetland boundaries.[14]

I. The Majority's Construction of the Statute Is Untenable

¶ 37. We should not construe a permit condition in a way that renders the permit nonsensical. See Agency of Nat. Res. v. Handy Family Enters., 163 Vt. 476, 482, 660 A.2d 309,

---

[13] My argument is limited to cases like this in which the proposed permit extension would extend the permit beyond the period when the boundary delineation underlying that permit was valid—in this case, five years. Nothing about my argument suggests that a permit extension within the period in which the boundary delineation remains valid requires a reevaluation of the wetland boundary.

[14] In particular, I would reverse the Environmental Division's judgment as to Questions 3, 4, 5, 11, and 12. I join the majority's affirmance with respect to Questions 1, 2, 6, 7, 8, 9 and 10 for the reasons stated by the majority.

312 (1995) ("We see no reason to depart from normal statutory construction techniques in interpreting permit conditions."); Dep't of Taxes v. Montani, 2018 VT 21, ¶ 24, __ Vt. __, 184 A.3d 723 (explaining that courts should avoid constructions that "produce absurd or illogical consequences"). A construction of the 2010 CUD that treats Condition E as irrelevant to an extension request pursuant to Condition D would do just that. Because (1) pursuant to Condition E and the Vermont Wetland Rules (VWR), the wetland boundary determination is invalid after five years, and (2) the boundaries of the wetland are integral to the permit, a CUD extended pursuant to Condition D without redelineated boundaries would no longer apply to a validly delineated area and thus would be meaningless. I expand on each of these points below.

¶ 38. First, by its plain terms, Condition E provides that the wetland boundary determination upon which the 2010 CUD was predicated "is valid for five years from the date of this determination." There is nothing unclear about this provision. After five years, the subject wetland, assuming it still exists, no longer has valid or established boundaries.

¶ 39. This requirement is consistent with the VWR in effect at the time. Those rules require that "[t]he presence of a wetland and the boundary between a wetland and upland shall be delineated by the methodology set forth in the Federal Manual for Identifying and Delineating Jurisdictional Wetlands, as amended, and supplemental guidance documents issued by the U.S. Army Corps of Engineers." Vermont Wetland Rules § 3.2(a), Code of Vt. Rules 12 030 026 (2010) [hereinafter 2010 VWR], https://dec.vermont.gov/sites/dec/files/documents/WSMD_Vermont WetlandRules_2010_7_16.pdf [https://perma.cc/YRJ2-ZTXK]. The Army Corps of Engineers has issued guidance indicating that jurisdictional determinations, including wetlands delineations, are valid for five years "unless new information warrants revision of the determination before" that time. U.S. Army Corps of Eng'rs, No. 05-02, Regulatory Guidance Letter on Expiration of Geographic Jurisdictional Determinations of Waters of the United States ¶ 3(a) (June 14, 2005),

https://usace.contentdm.oclc.org/utils/getfile/collection/p16021coll9/id/1246 [https://perma.cc/W3CK-RQQD]].

¶ 40. The five-year limitation on the validity of wetland delineations makes sense; wetlands are dynamic in their scope and character. As the Army Corps of Engineers explained in its Regulatory Guidance Letter, "[s]ince wetlands and other waters of the United States are affected over time by both natural and [human-caused] activities, local changes in jurisdictional boundaries can be expected to occur. As such, jurisdictional determinations cannot remain valid for an indefinite period of time." Id. ¶ 2(a). In fact, the Army Corps of Engineers guidance acknowledges that in some cases rapidly changing environmental conditions may merit reverification sooner than five years after the original delineation. Id. ¶ 3(a). Given that the delineation of a Class I or Class II wetland drives the findings underlying a wetland CUD and determines the scope and requirements of the CUD itself, it makes sense that the permit limits the validity of the wetland delineation in this case to five years.

¶ 41. Second, the delineation of the wetland that is the subject of the CUD is integral to both the findings underlying the permit and the terms of the permit. This is apparent from the 2010 CUD itself.

¶ 42. The Secretary's findings of fact for the 2010 CUD relate to a specifically delineated area of wetland: a thirteen-acre wetland complex in a ravine along Englesby Brook. The findings describe the character of the subject wetland, the flora found there, the protected functions of the wetland, and the functions that are not present or are present at such a minimal level as not to be protected functions. They consider the impact of the project on the described wetland and its protected functions. The findings reflect the Secretary's conclusions that the project will not lead to any undue adverse impacts and that the project "cannot practicably be located outside the wetland and buffer zone or on another site owned, controlled or available to satisfy the basic project purpose." They further state, "if the project is constructed according to the specifications

22

of the application and accompanying site plans, and the conditions of this Conditional Use Determination, the resulting wetland and buffer zone alteration is not expected to result in any violations of the Vermont Water Quality Standards." These findings are specific to a wetland with validly established boundaries. The Secretary's assessment of the impact of the project as proposed on the wetland's protected functions, and the determination that the proposed use cannot practicably be located outside the wetland and buffer zone, require consideration of the location and impacts of the project relative to the location, characteristics, and boundaries of that specific wetland.

¶ 43.   Likewise, the terms of the permit itself depend on established wetland boundaries for their effect.  The permit only purports to allow impacts within the wetland and buffer zone.  It requires all construction activities "in the wetland and adjacent 50-foot buffer zone" to be performed in compliance with the City's proposals and submissions.

¶ 44.   So if Condition D and Condition E are unrelated and operate independently such that the grant of a permit extension more than five years from the operative wetland delineation is not conditioned on a redelineation, then the Secretary could simply issue an order extending the expiration date of an existing CUD, even though that permit was based upon boundaries that were, as a matter of law pursuant to the terms of the CUD itself, no longer valid.[15]

¶ 45.   At the time of the Secretary's extension of the permit, the wetland, assuming it continued to exist, would lack any valid boundaries—making any purported findings about the impacts of the project within the wetland or its buffer nonsensical.  Where does the wetland end?

_____

[15] I note that's not what happened here.  In this case, the City did secure a reevaluation of the wetland boundaries, the extended permit included revised findings to reflect that fact, and the extended permit established that the wetland boundaries would be valid for five more years.  Only when the permit was on appeal to the Environmental Division did the Secretary assert that the reevaluation of the wetland boundaries was not actually a requirement for the permit extension in the first place.

23

Where does the buffer lie? How can we know what a project's impacts on the wetland actually are when we don't fully know where the wetland is?

¶ 46. Moreover, the scope of such a permit would be impossible to assess: the CUD would authorize specified development within a purportedly specified wetland, and would condition the CUD on compliance with certain requirements within the wetland and buffer, but the exact location of the wetland and buffer would be unknown. How would the City, the Secretary, or anyone else know if the City violated the permit by conducting impermissible activities within the wetland or buffer when the boundaries of the wetland and buffer are undetermined? It makes no sense.

## II. A Construction Harmonizing Conditions D and E Better Aligns with the Language and Structure of the Permit

¶ 47. In construing the permit, the majority fails to grapple with the clear and unequivocal language of Condition E, providing that the boundary determination that defines the subject wetland and is the foundation for the CUD is no longer valid after five years. See State v. Tierney, 138 Vt. 163, 165, 412 A.2d 298, 299 (1980) ("In construing a statute, this Court considers it as a whole, and, if possible, gives effect to every word, clause and sentence."). In contrast, a construction of the CUD pursuant to which the City must conduct a reevaluation before the Secretary can grant the extension is consistent with all of the language in the CUD. Contrary to the majority's suggestion, ante, ¶ 21, the fact that Condition D sets a deadline for an application for an extension does not mean that the Secretary's exercise of discretion in granting a requested extension is limitless, or that the pending invalidity of the wetland boundary determination is irrelevant.

¶ 48. The majority focuses on the fact that the request for extension must be filed at least thirty days prior to the permit expiration, reads the permit to contemplate a reevaluation of the boundary after the five-year time period marking the validity of the delineation expires, and

24

concludes that therefore these two conditions apply during distinct time periods. Ante, ¶ 21. But there are two different five-year limitations in play here: the expiration of the CUD if the project is not completed within five years and the five-year limitation on the validity of the wetland boundary determination. Had the initial permit period been only three years, then no delineation would be required for an extension of the permit for another two years. More important, Condition D requires that an extension request be filed at least thirty days before expiration of the permit "in order to prevent the termination of this Conditional Use Determination." This language makes it clear that the City's timely filing of the request is necessary and sufficient to forestall the CUD's expiration, and that the Secretary is not required to actually issue a ruling extending the CUD before its initial expiration date in order to prevent the permit's termination. But the permit contains no language requiring a ruling on the extension request in any particular time frame.

¶ 49. Given these considerations, the most sensible way to understand the interaction between Conditions D and E is that the CUD requires the permittee to file an extension request at least thirty days prior to the expiration of the CUD in order to, in effect, toll the expiration of the permit, but requires reevaluation of the wetland boundaries before the Secretary may approve the extension if doing so extends the CUD beyond the five-year validity of the boundary determination.[16] This construction harmonizes and gives effect to all of the terms of the permit.

¶ 50. The majority's construction of the CUD also fails to consider the CUD as a whole. On the majority's view, the permit provides no guidance as to how the Secretary is to exercise the discretion afforded under Condition D, and affords no avenue for reviewing the reevaluation required by Condition E in the context of this permit proceeding.

---

[16] Given this analysis, I reject Fortieth's argument that the City's failure to secure a completed reevaluation of the wetland boundaries and buffer before the City requested an extension of the CUD is fatal to the City's request. By filing a timely request for extension, the City effectively ensured that the existing CUD would not terminate pending further proceedings; but the Secretary could not approve the extension without the required reevaluation of the wetland boundaries.

25

¶ 51. Condition D does not require the Secretary to approve a timely filed request for extension; instead, the Secretary's authority to grant an extension is discretionary under the terms of the CUD. Condition D does not expressly identify the factors that guide the Secretary's exercise of discretion. If the only relevant consideration were the timeliness of the request for an extension, the permit would mandate an extension upon timely filing. It does not; it is discretionary. Understood in light of Condition E and the purposes of the CUD in the first place, important considerations include whether the existing delineation will become invalid before or during the extended period of the permit, and whether the required reevaluation undermines the critical findings that the project will have no undue adverse impact on the protected functions of the wetland.

¶ 52. At the same time, understood as a free-floating requirement untethered to a permit extension, Condition E appears to create an important but unreviewable requirement. If the reevaluation is not a condition precedent to approval of a CUD extension beyond the period in which the boundary determination is valid, how is that reevaluation reviewable in the context of the CUD proceeding? The majority suggests that because the requirements of Condition E apply in any event, a permittee will be required to undertake a reevaluation. If the reevaluation discloses changes in the wetland boundaries or new harmful impacts from the projects, the Secretary could initiate a new delineation proceeding pursuant to Section 8 of the Vermont Wetland Rules. Vermont Wetland Rules § 8, Code of Vt. Rules 12 030 026 (2018) [hereinafter 2018 VWR], https://dec.vermont.gov/sites/dec/files/documents/wsmd_VermontWetlandRules_2018.pdf [https ://perma.cc/G494-DC44].[17] If the new delineation identified a new wetland, the majority asserts, the Secretary could then address any project impacts to that new wetland through a new permitting proceeding.

---

[17] As noted in the majority, <u>ante,</u> ¶ 23 n.8, a new set of VWR took effect on August 15, 2018.

¶ 53. This answer to the question of how the redelineation pursuant to Condition E may be reviewed is flawed on multiple levels. First, it's not at all clear procedurally how the Secretary could initiate a new permitting proceeding regarding this project at some unspecified date in the future, especially if the project is partially or even completely constructed. Second, the majority describes a path for dealing with entirely new wetlands (initiate a new permitting proceeding) that would not make sense in the context of changes to the contours of wetlands that have already been identified and made the subject of permitting proceedings. And finally, initiation of the review process described by the majority falls entirely to the Secretary. 2018 VWR § 8.1. The review process posited by the majority would not only be clunky and circuitous; it would leave established parties to this permitting proceeding without a mechanism to challenge the conclusions of the reevaluation in the context of this permit.

¶ 54. Understanding the permit conditions as requiring a reevaluation of the wetland boundaries if an extension will extend the CUD beyond the period of time when the existing boundary delineation is valid avoids these pitfalls. It provides considerations to guide the Secretary's discretionary decision whether to extend the CUD pursuant to Condition D, and recognizes a framework for enforcing, reviewing, and making relevant the reevaluation required pursuant to Condition E in the context of this permitting proceeding.

¶ 55. Finally, a CUD extension that simply adopted the terms of the underlying permit but inserted a new effective date could completely write the reevaluation requirement of Condition E out of the permit; if the delineation is only valid for five years from the date of the permit, then substituting a new permit date by way of extension would effectively discharge the reevaluation requirement.

III. The Underlying Statute and Regulations Reinforce This Construction

¶ 56. Requiring a reevaluation before extending the permit beyond the period during which the prior boundary delineation is valid also best promotes the purposes of the wetland-

27

protection laws. The VWR make the policy underlying the statute and associated rules clear, expressly stating that "[i]t is the policy of the State of Vermont to identify and protect significant wetlands and the values and functions which they serve in such a manner that the goal of no net loss of such wetlands and their functions is achieved." 2010 VWR § 1.1.[18] In pursuit of this policy, the wetlands protection statute expressly prohibits activities in a significant wetland or buffer zone of a significant wetland "except in compliance with a permit, conditional use determination, or order issued by the Secretary." 10 V.S.A. § 913(a). It defines "[s]ignificant wetland" to include any Class I or Class II wetland, id. § 902(11), and "[b]uffer zone" as "an area contiguous to a significant wetland that protects the wetland's functions and values," id. § 902(9). The statute establishes a buffer zone for Class I wetlands that "extend[s] at least 100 feet from the border of the wetland, unless the Department determines otherwise," and for Class II wetlands that "extend[s] at least 50 feet from the border of the wetland unless the Secretary determines otherwise." Id. § 902(9). The VWR, past and present, reinforce the statutory requirements. See 2010 VWR § 9.1 (prohibiting activity in a Class I or Class II wetland or associated buffer zone "unless it is an allowed use or authorized by a permit, conditional use determination, or order issued by the Secretary").[19]

¶ 57. Given the dynamic nature of wetlands, see U.S. Army Corps of Eng'rs, Regulatory Guidance Letter ¶¶ 2(a)-3(a), if the Secretary can extend a CUD for activity in a wetland when the boundaries of the wetland are not validly established, there is a reasonable likelihood that activity within significant wetlands or protected buffer zones that the VWR prohibits unless permitted will

---

[18] Both superseding revisions to the VWR maintained this statement of purpose. See 2018 VWR § 1.1; Vermont Wetland Rules § 1.1, Code of Vt. Rules 12 030 026 (2017) [hereinafter 2017 VWR], https://dec.vermont.gov/sites/dec/files/documents/wsmd_Vermont_Wetland_Rules_2017 .pdf [https://perma.cc/H4SP-L857].

[19] Both superseding revisions to the VWR reflect this statutory requirement. See 2018 VWR § 9.1; 2017 VWR § 9.1.

be allowed without any review of its impacts. Such a result would squarely undermine the purpose and intent of the statutory and regulatory scheme.

## IV. The History of This Proceeding and Subsequent Changes to the VWR Reinforce This Understanding

¶ 58.  The conduct of all parties to this proceeding prior to the Secretary's change of position before the Environmental Division reinforces that the construction adopted in this dissent best captures the intent of the permit and the expectations of all parties involved based on the terms of the permit and the statutory framework. Although my analysis does not rest in any part on the 2017 (and now the 2018) revisions to the VWR, the suggestion that the revision imposed more onerous requirements, rather than providing greater clarity as to the existing scheme, is inconsistent with the record.

¶ 59.  The only representation the City's agent included in requesting an extension of the 2010 CUD was that "[t]he proposed project's wetland areas and impacts outlined in the original permit authorization have not changed. The proposed project will result in unavoidable impacts to 20,620 [square feet] of Class II wetland and 33,585 [square feet] of buffer zone along Englesby Brook." The City's agent apparently understood the changes to the wetland areas and impacts, or lack thereof, as considerations pertinent to its request to extend the CUD.

¶ 60.  Fortieth likewise understood the changes, or lack thereof, to the wetland boundaries as relevant, commenting to the Wetlands Program Manager that the City's representation that the wetlands areas and impacts had not changed was unsupported by "any field summaries, data sheets, maps, site visit memoranda, photographs, or other documents demonstrating that" a wetland consultant evaluated the wetland to be protected by the CUD.

¶ 61.  And the Secretary acknowledged that a redelineation of the wetlands on the project site was required by Condition E, requesting additional information from the City to support its claim that the wetland areas and wetland impacts approved in the original CUD had not changed.

The Secretary continued the proceeding until the City's consultants were able to reevaluate the wetlands on the site and provide updated delineations; agency staff participated in site visits with the City's consultant; previously delineated wetlands were redelineated and field-verified; and delineations were provided for two additional wetlands found on the project site. The Secretary's ultimate approval of the CUD rested on findings that expressly took into account the redetermined boundaries. In short, the Secretary proceeded exactly as required by the CUD and the applicable statutes and rules.

¶ 62. My analysis of the CUD does not turn on this history. Our job is to construe the permit as written and intended, regardless of the parties' understandings. But it's telling that all three of these stakeholders apparently shared the same understanding of the relationship between a request to extend the permit and the need to reevaluate the wetland boundary—even though this understanding was directly counter to the City's interests and involved a regulatory regime administered by the Secretary. To the extent that the majority describes the 2017 amendments to the VWR as providing an "enhanced" standard, ante, ¶ 25, I believe that characterization is belied by this record.

¶ 63. The 2017 rules, adopted well before the proceedings at the Environmental Division were done, make it crystal clear that the Secretary may only extend a permit "if the permittee re-evaluates and redelineates the wetland resources impacted by the authorized activity and the Secretary determines there will be no impact to Class I or Class II wetland or buffer beyond those impacts permitted under the original permit." 2017 VWR § 9.1.[20] In so providing, for all the reasons set forth above, the rules do not create a more onerous burden for a permittee seeking an extension; rather, they make even clearer the longstanding requirements of the VWR. See Doe v. Vt. Office of Health Access, 2012 VT 15A, ¶ 26, 191 Vt. 517, 54 A.3d 474 ("We presume that the

---

[20] The superseding 2018 VWR maintain this requirement. 2018 VWR § 9.1.

Legislature intended to change the meaning of a statute when it amends it, but we will recognize clarification of the law where the circumstances clearly indicate it was intended." (quotation omitted)).

¶ 64.   For the above reasons, I respectfully dissent.

¶ 65.   I am authorized to state that Justice Skoglund joins this dissent.

_____

Associate Justice