# STATE OF VERMONT

| SUPERIOR COURT | ENVIRONMENTAL DIVISION |
| Environmental Division Unit | Docket No. 76-7-18 Vtec |

| | |
|---|---|
| Champlain Parkway SW Discharge Permit | DECISION ON MOTION |

The present appeal represents the most recent chapter in the multi-faceted permitting process surrounding the City of Burlington's ("City") Champlain Parkway highway project ("the Project"). Appellant Fortieth Burlington, LLC, ("Fortieth") challenges a decision of the Vermont Agency of Natural Resources ("ANR") approving the renewal of an amended stormwater discharge permit, No. 3368-INDS.RAR, for the Project. Before the Court is the City's motion to dismiss and/or clarify a majority of the fourteen Questions Fortieth set forth in its Statement of Questions.

An original and amended stormwater permit preceded the present permit on appeal. The relevant history of the Project's stormwater permits is as follows:

ANR issued the Project's original stormwater permit to the City in 2010. It issued an amended permit, No. 3368-INDS.RA, ("Amended Permit") on October 11, 2012. The City applied for renewal of the Amended Permit on September 15, 2017. As part of its renewal review, ANR opened the application up for public comment from January 3 to February 2, 2018. During this period, Fortieth submitted comments on the draft renewal permit. After considering, but not incorporating, Fortieth's comments, ANR issued the renewed permit ("Renewal Permit") on June 19, 2018. Fortieth timely appealed ANR's decision to this Court on July 18, 2018.

1

**Legal Standards**

The City first moves to dismiss Questions 4, 6, and 10-12 of Fortieth's Statement of Questions pursuant to V.R.C.P. 12(b)(6) for failure to state a claim upon which this Court can grant relief.[1] See V.R.C.P. 12(b)(6), applicable here through V.R.E.C.P. 5(a)(2).

We begin our analysis by noting that motions to dismiss under V.R.C.P. 12(b)(6) are "disfavored" and "rarely granted." Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5, 184 Vt. 1. In evaluating such motions, we take the factual allegations asserted by the nonmovant as true, keeping in mind that the purpose of a V.R.C.P. 12(b)(6) motion is to test the law of the claim, not the facts that might go to support it. Richards v. Town of Norwich, 169 Vt. 44, 48-49 (1999); Powers v. Office of Child Support, 173 Vt. 390, 395 (2002). We will only grant a Rule 12(b)(6) motion when "it appears beyond doubt that there exist no facts or circumstances that would entitle the [nonmoving party] to relief." Alger v. Dep't of Labor & Indus., 2006 VT 115, ¶ 12, 181 Vt. 309 (quotations omitted).

In the alternative, the City moves for clarification of these Questions. See V.R.E.C.P. 5(f) ("The statement [of questions] is subject to a motion to clarify or dismiss some or all of the questions."). The City also requests clarification of the remaining Questions in Fortieth's Statement, but particularly directs our attention to Questions 3, 6, 7, 8, and 13.

This Court has the discretion to order an appellant to clarify or narrow its statement of questions. See In re Atwood Planned Unit Dev., 2017 VT 16, ¶ 14, 204 Vt. 301. We will do so when necessary to ensure that "the claims have enough specificity to notify the opposing party and the court of the issues on appeal." Id. (citing In re Verizon Wireless Barton Permit, 2010 VT 62, ¶ 20, 188 Vt. 262; In re Gulli, 174 Vt. 580, 583 (2002) (mem.)).

**I.      Questions 4 and 6**

We first consider the City's challenges to Questions 4 and 6, which relate to the Project's alleged stormwater discharges into wetlands G and Y. More specifically, Question 4 asks whether

---

[1] The City originally included Question 5—asking whether the Project's alleged stormwater discharges into wetlands G and Y require a wetland permit—in its motion. In its opposition to the City's motions, Fortieth informed the Court that it has agreed to withdraw Question 5. ANR previously decided that the City did not need to acquire a permit for the Project's alleged impacts on wetlands G and Y. That decision is the subject of a separate appeal that is also pending before this Court. See Champlain Parkway Wetland Determination, No. 39-3-18 Vtec. Accordingly, we **DISMISS** Question 5 based on the parties' mutual agreement.

2

the Project will discharge stormwater into wetlands G and Y. Question 6 asks whether any discharges comply with the Vermont Water Quality Standards ("VWQS") and the Clean Water Act ("CWA").

The City argues for dismissal of these Questions because they raise concerns pertaining to impacts upon wetlands, not stormwater management. Further, the City asserts that Question 4 should be dismissed because it does not itself raise a stand-alone issue on which this Court could provide relief. In the alternative, the City requests that this Court order Fortieth to clarify Question 6 by naming the specific provisions in the VWQS and CWA that are relevant to the Renewal Permit and its governance of the Project's stormwater discharges.

The City is correct in noting that Question 4 does not itself raise an issue upon which this Court could grant relief. However, the question of whether the Project discharges stormwater into the wetlands is a logical antecedent, and therefore intrinsic, to Question 6, which asks whether, if there are discharges, those discharges meet certain regulatory standards. In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190 (recognizing that this Court has jurisdiction over issues that are intrinsic to those raised in the Statement of Questions).[2] This is an issue on which the Court can potentially grant relief. We therefore **DENY** the City's motion to dismiss Question 4.

Further, we **DENY** the City's motion to dismiss Question 6. At this stage of the proceedings, where we must assess whether any facts or circumstances exist that might entitle Fortieth to relief on this issue, we cannot conclude that any potential stormwater impacts to wetlands G and Y would not have implications for the Renewal Permit.

That being said, we **GRANT** the City's motion to clarify Question 6 and order Fortieth to set out the specific provisions in the VWQS and CWA relevant to the stormwater discharges, the Renewal Permit, and their relationship to wetlands G and Y. As currently presented, Question 6

---

[2] This Court typically cites Jolley for the principle that issues implicit to a question in the Statement of Questions are within our jurisdiction. See, e.g., In re Berger & Katz Expansion Applications, Nos. 119-7-10 Vtec, 141-9-11 Vtec, slip op. at 10-11 (Vt. Super. Ct. Envtl. Div. May 30, 2012) (Durkin, J.). While the factual inquiry in Question 4 does not have legal relevance standing alone, we also interpret Jolley (and the subsequent case law applying it) to stand for the proposition that questions presenting a factual inquiry relevant to a separate legal question are valid because they are intrinsic to that legal question. We have extensive case law emphasizing the primary importance of clarity in the Statement of Questions. See, e.g., In re Frostbite Mine, No. 12-1-11 Vtec, slip op. at 1-2 (Vt. Super. Ct. Envtl. Div. Nov. 3, 2011) (Durkin, J.). These factual questions would be considered by the Court while answering the legal question regardless. We are not inclined to dismiss questions that clarify the factual and legal issues relevant to our ultimate determination.

references the VWQS and CWA broadly, without drawing the connection between those regulatory authorities and the Renewal Permit on appeal. See In re Couture Subdivision Permit, No. 53-4-14 Vtec, slip op. at 2-3 (Vt. Super. Ct. Envtl. Div. July 17, 2015) (Durkin, J.) (dismissing a question that did not reference any specific provisions, just the applicable regulations generally).

Further, to the extent Fortieth asserts that the VWQS are relevant because they contain Vermont's Anti-Degradation Policy (see VWQS § 1-03), this issue is raised by Question 2 of its Statement of Questions. A separate question on this subject is therefore unnecessary and redundant. See V.R.C.P. 12(f) (describing this Court's authority to strike redundant questions).

We therefore direct that Fortieth shall have **30 days** from the issuance of this Decision to clarify Question 6 in a manner consistent with this Decision. A failure to adequately clarify will result in dismissal of that Question.[3]

## II.    Questions 10, 11, and 12

We now turn to the City's assertion that this Court must dismiss Questions 10 through 12. These Questions relate to the Project's permitted discharges of stormwater into the Pine Street Barge Canal ("Barge Canal") and the Barge Canal's status as a Superfund site.[4]

The City asserts that Fortieth has not established the relevance of these Superfund considerations to ANR's decision on the Renewal Permit. The City also asserts that any of Fortieth's concerns regarding the Project's compliance with the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") or the remediation plan for the Superfund site ("Remediation Plan") must be raised under those regulatory schemes. See 42 U.S.C. §§ 9601-9675 (setting out CERCLA's statutory provisions). In addition, the City offers that finality principles preclude Fortieth from raising issues that were settled by the original or amended permits in 2010 and 2012, respectively.

---

[3] Because Question 4 only has legal relevance in relation to Question 6, a failure to clarify Question 6 within 30 days will also result in the dismissal of Question 4.

[4] Question 10 asks whether the discharges of stormwater into the Barge Canal comply with the federal Comprehensive Environmental Response, Compensation and Liability Act. Question 11 raises the issue of whether the City needed to provide notice of the proposed Project discharges into the Barge Canal to the Barge Canal Performing Defendants (those parties tasked with remediating the Superfund site). Question 12 queries whether the Project's discharges impede, jeopardize, or conflict with the "contamination remedy" for the Superfund site, as established by the Environmental Protection Agency's 1998 Record of Decision for the site and two subsequent Explanations of Significant Difference.

While the City presents us with a motion to dismiss pursuant to V.R.C.P. 12(b)(6), we first evaluate the jurisdictional propriety of these Questions, which implicates V.R.C.P. 12(b)(1) and a lack of subject matter jurisdiction.  See, e.g., In re Pelkey Final Plat Major Subdivision, No. 172-12-12 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 3, 2013) (Durkin, J.) (considering a Rule 56 motion as a Rule 12(b)(1) motion for purposes of evaluating jurisdiction).  Further, pursuant to V.R.C.P. 12(h)(3), "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."  See Poston v. Poston, 161 Vt. 591, 592 (1993) (mem.).

**A. Whether Questions 10, 11, and 12 raise issues beyond this Court's jurisdiction**

Fortieth's Questions 10 through 12 effectively ask whether the Renewal Permit is invalid because it violates conditions of CERCLA and the Remediation Plan.  To answer these questions would require this Court to apply the substantive standards established in those regulatory sources to the details of the Project.  We cannot do so without exceeding our jurisdiction.

First, CERCLA itself provides that "the United States district courts shall have exclusive original jurisdiction over all controversies arising under this chapter . . . ."  42 U.S.C. § 9613(b).  This limitation is subject to narrow exceptions not applicable here.  See id. § 9613(a), (h).  Thus, to the extent Fortieth raises issues arising under CERCLA, it could not do so before ANR in the first instance, much less before this Court on appeal.  See, e.g., Fort Ord Toxics Project, Inc. v. Cal. E.P.A., 189 F.3d 828, 832 (1999) (discussing lack of state court jurisdiction over CERCLA claims).

Second, this Court's jurisdiction over appeals is limited.  In re Margaret Pratt Assisted Living Site Plan, Conditional Use & Act 250 Approvals, Nos. 111-8-14 Vtec, et al., slip op. at 12-13 (Vt. Super. Ct. Envtl. Div. June 21, 2016) (Durkin, J.) (citing In re Torres, 154 Vt. 233, 236 (1990)).  Our appellate jurisdiction is limited by 10 V.S.A. § 8503(a)(1), which narrows appealable ANR permit decisions to those made under specific chapters of Title 10.  Further, in our de novo review we can only apply those substantive standards that were relevant before ANR.  V.R.E.C.P. 5(g); In re Stormwater NPDES Petition, No. 14-1-07 Vtec, slip op. at 21 (Vt. Envtl. Ct. Aug. 28, 2008) (Durkin, J.) (citing In re John A. Russell Corp., 176 Vt. 520, 526-27 (2003)).

In the present matter, ANR made its decision on the Renewal Permit under Chapter 47 of Title 10, which governs water pollution control in Vermont.  Specifically, ANR issued the Renewal

Permit pursuant to § 1264 of Chapter 47, which governs stormwater management. See 10 V.S.A. § 1264(h). ANR decisions made under Chapter 47 can be appealed to this Court. 10 V.S.A. § 8503(a)(1)(E).

Fortieth has not identified, nor can we find, any provision in § 1264, or Chapter 47, or any of the other regulatory materials those authorities incorporate by reference (including the VWQS and CWA) that incorporates the standards of CERCLA or documents produced pursuant to CERCLA, like the Remediation Plan.[5] Thus, to the extent they challenge the Renewal Permit on CERCLA grounds, Questions 10 through 12 fall outside the scope of our jurisdiction.

**B. Whether Questions 10 through 12 raise issues precluded by ANR's final and binding decisions on the prior stormwater permits**

Questions 10, 11, and 12 also implicate principles regarding the finality of issues settled by prior permitting decisions. Both this and the Vermont Supreme Court have emphasized the importance of finality in permit proceedings, including ANR permit proceedings. See, e.g., In re Champlain Parkway Wetland Conditional Use Determination, 2018 VT 123, ¶ 30; In re Unified Buddhist Church, Inc., Indirect Discharge Permit, No. 253-10-06 Vtec, slip op. at 3-4 (Vt. Envtl. Ct. July 31, 2007) (Wright, J.). Thus, where a "permit decision has become final, a party cannot later collaterally attack that final decision through a separate proceeding." Champlain Parkway, 2018 VT 123, ¶ 30 (citations omitted) (incorporating into the ANR permit context, to some extent, the principle of finality defined in 24 V.S.A. § 4472(d) for municipal permit decisions).

The Vermont Supreme Court has applied this principle in the ANR permitting context to conclude that an ANR decision that affected a single permit condition—a grant of a permit extension—does not open up the permit's other, untouched conditions to collateral review on appeal. Id., ¶¶ 29-32. These other conditions still remained active, applicable requirements under the permit, but the question of their validity fell outside of the Supreme Court's appellate jurisdiction. Id., ¶ 31 n.10.

---

[5] Section 117 of CERCLA, as amended by the Superfund Amendments and Reauthorization Act of 1986, requires the issuance of decision documents—including a "record of decision" and "explanation of significant difference"—for remedial actions taken pursuant to §§ 104, 106, 120, and 122 of CERCLA. See 42 U.S.C. § 9617. Sections 300.430(f)(2), 300.430(f)(4), and 300.435(c)(2) of the National Oil and Hazardous Substances Contingency Plan set out the requirements these documents must satisfy.

Similarly, the Supreme Court has applied the finality principles to limit the scope of review of an ANR decision granting a second permit amendment to the contents of the second amendment itself. In re Unified Buddhist Church, Inc., 2006 VT 50, ¶ 13, 180 Vt. 515 (mem.). The Court affirmed the Environmental Board's conclusion that permit conditions "approved in the earlier [original and first amended] permits and unchanged in the appealed permit [] were not reviewable anew." Id., ¶ 11. Critical to the Court's decision in Unified Buddhist Church was the fact that the party opposing the amendment did not identify a substantial change to the previously established permit conditions that unsettled their finality. Id., ¶¶ 14-19.

Taking this precedent together, we conclude that parties opposed to the amendment or renewal of an ANR stormwater permit cannot collaterally attack conditions of that permit that are not substantially changed by the proposed renewal and are not affected by a regulatory or factual change occurring since the prior ANR approval.[6]

We also think it necessary to address one of this Court's decisions in the Unified Buddhist Church series of cases, which involved the renewal of the same permit at issue in the 2006 Vermont Supreme Court decision cited above. No. 253-10-06 Vtec (Vt. Envtl. Ct. July 31, 2007) (Wright, J.). In that decision, the Court evaluated a motion in limine filed by the applicant that sought to exclude from the renewal review all issues addressed and settled in the proceedings surrounding the original permit and the first and second permit amendments. Id. at 3. Contrary to the conclusion we state above, the Court concluded that review of the renewal should proceed as if there were no prior permits and no final and binding conditions.

The present matter is distinguishable based on the applicable law. First, Unified Buddhist Church involved the renewal of an indirect discharge permit, not a stormwater permit, which was governed by a different statutory section. See 10 V.S.A. § 1263 (discharge permits); cf. 10 V.S.A. § 1264 (stormwater management). This distinction is pivotal because the statute governing discharge permits explicitly requires that "[a] renewal permit shall be issued following all

_____

[6] While by no means binding, the introductory provision of the Renewal Permit itself contains a good summary of the legal standard: "This permit . . . shall be valid until the designated expiration date not withstanding any intervening change in water quality, effluent, or treatment standards, or classification of the receiving waters . . . . However, any such *changed* standard or classification, and any applicable requirement in a total maximum daily load (TMDL) for, [sic] shall be applied in determining whether or not to renew this permit, and in determining the conditions of a renewed permit." Renewal Permit, ¶ 1 (emphasis added).

determinations and procedures required for *initial permit application*." 10 V.S.A. § 1263(e) (emphasis added); see also In re Entergy Nuclear/Vt. Yankee Thermal Discharge Permit Amendment, No. 89-4-06 Vtec, slip op. at 4 (Vt. Envtl. Ct. May 22, 2008) (Wright, J.) (discussing § 1263(e)), *aff'd in part, rev'd in part on other grounds*, 2009 VT 124, 187 Vt. 142. A new review is a statutory prerequisite for renewal of a discharge permit.

The stormwater management statute contains no such requirement. The lack of such a statutory requirement, and the fact that the requirement was included in a neighboring statutory provision, bolsters our interpretation that an entirely new review of stormwater renewals is not appropriate, warranted, or authorized. See State v. Richard, 2015 VT 126, ¶ 8, 200 Vt. 401 (citation omitted) (reiterating that the Legislature "knows how to incorporate terms into [a] statute and that, when such terms are omitted, we presume [the] Legislature intended to do so.").

In Unified Buddhist Church, the specific statutory provision requiring a new review of renewals trumped the general principles of finality that this Court typically applies to municipal and ANR decisions. See State v. Deyo, 2006 VT 120, ¶ 16, 181 Vt. 89 (citation omitted) ("[W]here statutes covering a subject are more narrow than the common law, the common law remains in force as to cases outside the scope of the statute."). However, while the Court primarily relied on § 1263(e)'s new review requirement in its 2007 decision, that Court also went on to hold in the alternative that even without the statute, finality principles required a new review of the renewal request. Unified Buddhist Church, No. 253-10-06 Vtec at 7-8 (July 31, 2007).

This alternative holding does not correspond with our current stance on finality for ANR stormwater permit renewals, which is stated above. In the prior decision, the Court rested its holding on the rationale that renewals would be no different from permit amendments without the requirement of an entirely new review for renewals. See id. at 8 (citing DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 16, 181 Vt. 609, for the principle that interpretations of statutes that render any provision mere surplusage should be avoided). This rationale overlooked the rule that the scope of an appeal of any amendment decision is limited to the changes proposed by the amendment, while permits up for renewal are subject to review under all changed regulatory provisions. See Unified Buddhist Church, 2006 VT 50, ¶¶ 10, 13;

8

see also 10 V.S.A. § 1264(h) (requiring that all permit renewals be up-to-date with regulatory changes). This difference is sufficient to render renewal and amendment proceedings distinct.

Applying these principles to this matter, Fortieth has not shown any changes in CERCLA or the Remediation Plan that might be relevant to the conditions of the Renewal Permit. Fortieth also has not identified any changed conditions in the Renewal Permit proceedings that implicate CERCLA or the Remediation Plan. For instance, Fortieth's concern that the Remediation Plan might interfere with the inspection and maintenance requirements of the Renewal Permit is not properly before the Court. That issue was finally decided by the original and amendment permit proceedings. Fortieth does not direct us to any regulatory, factual, or Project change disturbing that finality.

Lastly, Fortieth does not specify what features of the Project implicate which provisions of CERCLA or the Remediation Plan, other than to say that the permit prohibits the discharge of any hazardous materials or hazardous waste into the stormwater management system, which includes the Barge Canal. See Renewal Permit, ¶ 16(a). Fortieth fails to demonstrate how a permit condition barring the discharge of hazardous waste completely could run afoul of CERCLA or the Remediation Plan.

This Court does not have jurisdiction over the issues raised by Questions 10 through 12, the principles of finality preclude re-litigation of these issues, and Fortieth fails to offer a connection between CERCLA and the Renewal Permit's ban on hazardous discharges. Therefore, we **DISMISS** Questions 10, 11, and 12.

### III.    Questions 3, 7, 8, and 13

The City also moves for clarification of Fortieth's remaining Questions. The City directs our attention to Questions 3, 7, 8, and 13 in particular.[7]

First, Questions 3, 7, 8, and 13 are patently overbroad. They simply name the general titles of applicable regulations. See Couture, No. 53-4-14 Vtec at 2-3 (July 17, 2015). They do not inform this Court or the City of the particular issues to be addressed with motion practice or at

---

[7] These Questions ask, respectively, whether the Project complies with the Vermont Stormwater Management Manual; with the permit requirements in the Vermont Stormwater Management Statute, 10 V.S.A. § 1264(h); the 2017 Vermont Stormwater Management Rule for Impaired Waters; and the Lake Champlain Total Maximum Daily Load ("TMDL").

trial. The wide scope of potential claims, and the waste associated with preparing for all possible arguments inherent in the Statement of Questions as presented, produces an unfair burden on the City and provides no guidance to this Court as to the scope or nature of the appeal.

Further, the principles of finality discussed in the preceding section have some bearing on the legitimacy of Questions 3, 7, 8, and 13 as presented. In light of our above conclusions, we direct Fortieth to narrow these Questions to only raise issues related to specifically-identified regulatory, Project, or factual changes that have occurred since the Amended Permit was issued in 2012 that affect the validity of ANR's decision.

For these reasons, we **GRANT** the City's motion to clarify with respect to Questions 3, 7, 8, and 13. Fortieth shall have **30 days** to provide this Court and the other parties with a Statement of Questions that it has revised to reflect the above conclusions. Failure to do so will result in dismissal of these Questions. Because the City does not provide us with any argument on the clarity of Questions 1, 2, and 9, the City's motion is **DENIED** as to these Questions.

### IV. Question 14

The City also argues that Fortieth's remaining Questions must be narrowed because they raise issues that were not raised in the comments Fortieth submitted to ANR when the Renewal Permit was open for public comment. Under 10 V.S.A. § 8504(d)(2)(A), an appellant can only raise issues on appeal that it raised in its comments before ANR.

Given the conclusions this Court reaches above, the City's argument is only relevant to Question 14.[8] The City asserts that Question 14 does not fit within the scope of Fortieth's comments below, specifically Comment 5. Comment 5 asserts, in relevant part, that the City's application for the Renewal Permit should be treated as a new application and the materials accompanying the application do not demonstrate compliance with the 2017 Vermont

---

[8] The City also challenged Questions 3, 6, 7, 8, and 13 on this basis, arguing that these broad Questions reach much further than Fortieth's comments to ANR. The City does not argue that these Questions, if narrowed and clarified according to the parameters we set out in this decision, will still fail to fit within the scope of the comments. Further, to the extent the City's argument touches any of the other Questions, the City did not provide argument on these other Questions and, thus, did not meet its statutory burden under 10 V.S.A. § 8504(d)(2)(A)(iii). Thus, the City's motion to clarify these Questions is **DENIED** to the extent it relies upon this argument. We reserve the right to revisit dismissal of the revised Questions, should Fortieth's revisions fall outside the parameters set out in this Decision or the comments that Fortieth provided to ANR during the comment period below.

Stormwater Management Manual ("VSMM"). Question 14 raises the issue of which version of the VSMM—2002 or 2017—applies to the Project.

Pursuant to 10 V.S.A. § 8504(d)(2)(A), a party aggrieved by an ANR decision can only appeal that decision if they "submitted to the Secretary a written comment during the comment period or an oral comment at the public meeting conducted by the Secretary." Cf. 24 V.S.A. § 4471(a) (setting out a similar participation requirement for parties who wish to appeal a municipal panel's zoning decision). The comment must "identify each reasonably ascertainable issue with enough particularity so that a meaningful response can be provided." 10 V.S.A. § 8504(d)(2)(A)(i).

The party can only appeal issues related to the comment it submitted to ANR. Id. § 8504(d)(2)(A). The statute burdens the party moving to dismiss the appeal, or a specific issue in the appeal, with showing that the appellant has not satisfied this requirement. Id. § 8504(d)(2)(A)(iii).

We have not previously considered this statutory requirement. The requirement became effective on January 1, 2018.[9] 2015, No. 150 (Adj. Sess.), § 5b. In amending 10 V.S.A. § 8504 to add this requirement, the Legislature's purpose was to "require that an issue raised on appeal be identified or related to an issue identified in a comment to the Secretary while guarding against an overly technical approach to the preservation of issues for the purpose of appeal when interpreting whether an appeal satisfies [the statutory requirement]." Id.

Given that parties submitting comments to ANR do so during the initial public comment period, when they may not have had the opportunity to retain counsel and the permit might even be subject to further change; that the Legislature intended for this Court to avoid applying "an overly technical approach to the preservation of issues"; and the burden rests with the party

---

[9] Though the parties do not raise the issue, we note a discrepancy between the effective date stated in the act itself (January 1, 2018, except for some exceptions not relevant here) and that stated in the history of 10 V.S.A. § 8504 in the 2019 edition of the Vermont Planning, Development and Land Use Laws Annotated (defining an effective date of July 1, 2018). The difference is material to this matter because the public comment period for the Renewal Permit ran from January 3, 2018, to February 2, 2018. The participation requirement would not have taken effect at the time of Fortieth's comments if the effective date set out in the Vermont Planning, Development and Land Use Laws is correct. However, we conclude that the text of the act itself controls and the participation requirement defined in 10 V.S.A. § 8504(d)(2)(A) became effective on January 1, 2018. Thus, the requirement was in effect when Fortieth submitted its comments and it remains relevant to the scope of our jurisdiction in this matter.

seeking dismissal, a strict application of § 8504(d)(2)(A) is inappropriate. Instead, we import a principle this Court applies in determining the scope of issues on appeal based on an appellant's statement of questions. In that context, the Vermont Supreme Court has confirmed that issues intrinsic to the questions in a statement of questions may be preserved for review on appeal. See Jolley Assocs., 2006 VT 132, ¶ 9.

Applying that principle to the matter before us, we conclude that the issue of which version of the VSMM applies is intrinsic to Comment 5's assertion that the application for the Renewal Permit is a new application that does not demonstrate compliance with the 2017 version of the VSMM. Comment 5 questions the applicability of the 2017 VSMM to the Renewal Permit. Implicit in this is the question of whether the Renewal Permit needs to comply with the 2017 VSMM at all. See, e.g., In re LaBerge NOV, 2016 VT 99, ¶ 15, 203 Vt. 98 (concluding that the constitutionality of an ordinance provision was intrinsic to the question of whether the proposal at issue complied with the provision).

Further, comments supplied pursuant to § 8504(d)(2)(A) must identify each issue "with enough particularity" for ANR to provide a "meaningful response." 10 V.S.A. § 8504(d)(2)(A)(iii). Here, ANR's response to Comment 5 discussed the issue of which version of the VSMM applies to the Renewal Permit. Fortieth's Comment 5 enabled ANR to respond meaningfully to the question it raised; it is also sufficient to preserve this issue for appeal before this Court.

For the foregoing reasons, we conclude that the City has not met its burden of showing that Question 14 falls outside of the comments Fortieth provided to ANR below. The City's motion to clarify Question 14 is therefore **DENIED**.

## Conclusion

Because Question 4 is a logical antecedent, and intrinsic, to Question 6, we **DENY** the City's motion to dismiss the Question. We also **DENY** the City's motion to dismiss Question 6, but **GRANT** its motion to clarify that Question. Fortieth must clarify and limit Question 6 according to the discussion laid out in this Decision within the next **30 days**. Otherwise, Question 6 (and Question 4, which depends upon Question 6 for legal relevance) will be dismissed.

12

Question 5 is **DISMISSED** by mutual agreement of the parties.

For reasons of jurisdiction and finality, we **DISMISS** Questions 10, 11, and 12.

We also **GRANT** the City's request that we direct that Fortieth clarify Questions 3, 7, 8, and 13 because they are overbroad as written. As with Question 6, Fortieth must narrow and clarify Questions 3, 7, 8, and 13 within **30 days** of this Decision or the Questions will be dismissed. To the extent the City's motion to clarify reaches the remaining Questions, we **DENY** the motion.

Finally, we **DENY** the City's motion to clarify Question 14 because the City did not meet its burden of demonstrating that Fortieth failed to satisfy the participation requirement in 10 V.S.A. § 8504(d)(2)(A).

In conclusion, we note that the original Questions 1, 2, 4, 9, and 14 are properly before the Court as presented in Fortieth's Statement of Questions.

We direct that the Court Manager set this matter for a status conference after sixty days, so that the Court and the parties may discuss final trial preparations.

Electronically signed on April 29, 2019 at Burlington, Vermont, pursuant to V.R.E.F. 7(d).

_____

Thomas S. Durkin, Superior Judge
Environmental Division